TALIAFERRO, Judge.
Plaintiff, a judgment creditor of A. R. Conley, doing business as the Dockson Gas Company in the City of Alexandria, Louisiana, caused to be seized under Fieri Fa-cias some real estate and considerable personal property of the defendant, including about 28,000 gallons of butane-propane gas then in two storage tanks, also seized, in said city. Prior to the Sheriff’s ’sale of the property, the United Petroleum Gas Company, Inc., intervened and asserted a *651 vendor’s lien and privilege upon the gas to secure payment of a balance of $3,555.03 due it, on open account, for sale of gas to the defendant.
The intervenor alleged that for the period beginning June 16, 1948, and ending October 27, 1948, it sold and delivered to the defendant 209,244 gallons of gas, and the itemized account attached to an amended petition discloses that $17,088.18 was charged therefor against which payments in the amount of $13,538.20 were made. There was also a small charge of $5.15 in the account but this does not represent the price of any gas.
The intervenor also alleged that the gas was sold to defendant and delivered into his truck-tanks at Delhi, Louisiana. It prayed for recognition of the asserted lien and privilege upon the seized gas and that it be paid by preference and priority over other creditors, the proceeds of the sale thereof. Upon intervenor’s motion to that effect, there was separate appraisement and separate sale of the gas. It brought $1,-900.00 at the sale. To whom this fund should be paid is the primary issue in the case.
Defendant did not answer the intervention. Plaintiff’s answer articulately is a denial of each and every allegation of the petition of intervention, except those relating to the seizure under the fi. fa. and advertisement of the gas for sale.
The demand of the intervenor was rejected at his cost, and he appealed to this Court.
That Conley owes to intervenor the amount asserted by it on the price of gas is not questioned. He admitted this while testifying under cross-examination. The main defense revolves around the question of lack of identity of the gas on which the lien assertedly rests; and we understand that the lower Court’s judgment was based upon resolution of this 'factual question against intervenor.
The business relations 'between the inter-venor and defendant were 'conducted in this manner, viz.: The Sun Oil Company manufactured the gas and transported it in large tank cars from where manufactured to Delhi, Louisiana, where the tanks were spotted on what is referred to as Sun Spur. Through some sort of arrangement between intervenor and the oil company, not made clear in the record, after the tanks were spotted on the spur, the employees of the oil company would transfer the gas into tank trucks of the intervenor’s customers who would be billed therefor from intervenor’s office in Minneapolis, Minnesota. At the conclusion of each delivery of gas to defendant and, presumably, to other customers, an employee of the Sun Oil Company would make up what is called a “Gas Truck Sales Ticket” on a printed form. This ticket contained, inter alia, this information, to-wit: the date of delivery, gross and net gallonage, price per gallon and the total of the charge. It was then signed in multiple originals by defendant’s agent, the truck driver, and by the oil company’s employee, who delivered the gas. One of the signed tickets was delivered to defendant’s agent ■and another was mailed to intervenor’s office in Minneapolis, and served as a basis for the account charges against defendant. These tickets also disclosed that the gas was sold “for the United Petroleum Gas Company to Doekson Butane Company”.
The record discloses that from June 16th to October 26, 1948, defendant’s trucks were loaded with gas at Delhi over fifty times, which was delivered into his two storage tanks in Alexandria, whose combined capacity is over 35,000 gallons. The loads, eliminating three, each less than 500 gallons, averaged approximately 3,850 gallons. During June there were six deliveries, while in October there were eighteen deliveries. For 'said period, some four months, twelve payments were made on the account, three of which, aggregating $5,017.83, were made in October. The sale price of gas during October was approximately $6,000.00. Therefore, it becomes obvious that over this period of gas sales and deliveries to the defendant the contents of his. storage tanks were being daily reduced 'by drafts therefrom to meet the needs of his customers, while, on the other hand, these tanks were being resupplied with gas from the Delhi end of the line. It is also shown that at *652 no time during said period of business was the account balanced. Unpaid for gas was, all,along; -commingled with gas that was in part, at least, p'aid for, the result being that the identity of each was lost. This condition continued without cessation to the date of seizure.
It is a fundamental principle of law that in order to enforce a vendor’s lien against movable property the identity of such property must be possible of establishment; and that if such identity be lost by uniting or commingling the affected movable with another movable (or in some cases with an immovable),' the lien and privilege automatically is destroyed. It no longer exists. For the preservation of the lien and privilege, it must be possible for one, so to speak, to be able to put his hands on the specific object that was sold, and ■have the ability to separate it unimpaired from other objects or things with which it may be associated or to which it may be attached. That cannot be done in the present case.
Pertinent to the tendered question is Article No. 3230 of the Civil Code. It reads:
“When the things reclaimed consist in merchandise, which is sold in bales, packages or cases, the claim shall not be admitted if they -have been untied, unpacked or taken out of the cases and mixed with other things of the -same nature belonging to the purchaser, so that their identity can no longer be established.”
See also decisions in the following cases, to-wit: Stackhouse et al. v. Foley’s Syndica, 1 Mart., O.S., 228; H. & C. Newman v. Cannon, Sheriff, et al., 43 La.Ann. 712, 9 So. 439; Id., 44 La.Ann. 579, 10 So. 933; Bender v. Davis Cash Store, Inc., La.App., 163 So. 170; Cottonport Bank v. Dunn, La.App., 21 So.2d 525; Monticello v. Delavisio, La.App., 191 So. 162.
Appellant has cited no -case or authority that in the least derogates from the Code article and the well established jurisprudence on the discussed subject.
Liens and privileges, it goes without saying, are in derogation of rights common to all, and their operative effect is always strictly construed and held within -strict bounds. He who invokes and seeks to acquire for himself the extraordinary advantage designed to be accorded 'by liens and privileges, is invariably held to submit proof, clear and 'Convincing, of his right to such relief. The intervenor has failed to meet this inexorable requirement.
Other defenses urged by appellee need not be discussed or passed upon. .
For the assigned- reasons, the judgment from which appealed, is affirmed at appellant’s cost.