I iPEATROSS, J.
This appeal arises out of the seizure and sale of a drilling rig to satisfy a judgment against an absentee defendant. The trial court, on cross motions for declaratory judgment filed before the conclusion of the trial, held that the sheriffs sale of the drilling rig was valid. This appeal ensued. For the reasons stated herein, we affirm.

FACTS

In 1989, Byrnside Drilling Company, Inc. (“Byrnside”) drilled a well in Webster Parish. After completion of the well, Byrnside decided to leave the drilling rig in Webster Parish until it was needed on another job. Byrnside “stacked” the rig on a piece of property it claims to have believed belonged to the Jaycees or Masons. The property, however, was owned by Cortez Armour, who was very displeased that a drilling rig had been parked on her property without permission. The rig remained on the property for more than a year when Mrs. Armour retained an attorney to find the owner of the rig and have it removed. A demand letter was sent to Byrnside at the address listed by the Secretary of State as its agent for service of process in Monroe, Ouachita Parish. The letter was returned unclaimed and marked “moved.”
Mrs. Armour then filed suit, seeking rental payments for the use of her land and damages for conversion and enforcement of her lessor’s lien. Attempts to serve Byrnside were unsuccessful and a curator ad hoc was appointed, who was also unable to contact Byrnside. The curator answered the petition with general denials and judgment was ultimately rendered in favor of Mrs. Armour, awarding her $11,125 in total damages, $2,000 in | ^attorney fees and $150 for expert fees. The drilling rig was subsequently seized under writ of fien facias and the property was advertised in the Minden Press. The rig was sold with benefit of appraisal on July 25, 1990. It appraised for $4,000 and was sold to SH & J Drilling Company, Inc. (“SH & J”) for $15,000.
In August 1990, Byrnside obtained a drilling contract and went to move the rig. Finding the rig gone, Byrnside reported it as a theft to the sheriffs office, at which time it learned of the judgment and sheriffs sale. Byrnside subsequently filed a petition for damages naming Mrs. Armour and SH & J as defendants, alleging an unconstitutional taking of property without due process of law. SH & J answered, filed a reconventional demand and a third party demand. In the event the sheriffs sale was found to be invalid, SH & J sought reimbursement for improvements and maintenance of the rig while in its possession and a refund of the purchase price from Mrs. Armour. Mrs. Armour answered and filed a reconventional demand against Byrnside reasserting her allegations in her original petition and her lessor’s lien.
On January 6, 1992, First National Bank of West Monroe (“FNB”) intervened in the suit as the holder of a chattel mortgage which secured indebtedness of Byrnside to FNB of approximately $200,000. FNB asserted that its chattel mortgage was se *313 cured by the same drilling rig that was seized and sold and that the chattel mortgage was properly filed in Ouachita Parish, the domicile of Byrnside. According to FNB, it held a superior lien on the drilling rig which had not been satisfied by the sale; and, therefore, FNB ^asserted that the sheriffs sale was invalid. FNB subsequently assigned its security interest to Cisco Petroleum, Inc. (“Cisco”), who was substituted as intervenor. Cisco filed a motion for summary judgment claiming that the sale was a nullity because the price offered by the highest bidder was not sufficient to discharge the cost of the sale and the security interest, mortgages, liens and privileges superior to that of the seizing creditor, i.e., its chattel mortgage. Mrs. Armour opposed the motion for summary judgment, which was subsequently denied.
The matter proceeded to trial and testimony was adduced on September 10, 11 and November 25, 1998. On March 24, 2000, Mrs. Armour died and her heirs were substituted as defendants (hereinafter “Armour successors”). As of June 17, 2002, the parties still had not concluded presenting evidence in the case; however, on this date, Cisco filed a Petition for Declaratory Judgment seeking to have the court declare that SH & J’s claim for reimbursement was without merit. On August 1, 2002, the Armour successors filed a similar petition. Both Petitions for Declaratory Judgment sought a determination as to the validity of the sheriffs sale, an issue all parties agreed required resolution in order to reach the issue of any amount of reimbursement due SH & J.

ACTION OF TRIAL COURT

After argument on the Petitions for Declaratory Judgment, the trial court held that the sheriffs sale was valid; therefore, the issue of SH & J’s entitlement to reimbursement was rendered moot. Specifically, the trial court found that, since the act of mortgage was entered prior to the adoption |4of Chapter 9 of the UCC, the old chattel mortgage controls. It further held that all of the necessary steps were taken to serve Byrnside in Mrs. Armour’s initial suit and Byrnside made no effort to make itself known by changing its registered address or leaving a forwarding address on file. The trial court opined that Byrn-side cannot now come back and complain about the sale.
Regarding FNB, the original mortgagee, the trial court recognized that the mortgagee is entitled to notice reasonably calculated to apprise him of the sheriffs sale if that mortgagee is reasonably identifiable. Ultimately, because the mortgage was only filed in Ouachita Parish, the trial court found that FNB did not take steps to make itself reasonably identifiable, i.e., to protect the collateral should it be moved to other parishes. The chattel mortgage showed only that the rig would be located in Ouachita Parish “on Smith Road.” The trial court held that FNB, knowing the mobile nature of the portable drilling rig, had a duty to take steps to have the mortgage filed in the parishes in which it was located in order to put third parties on notice. Since FNB did not take steps to record its mortgage in the parishes in which the rig was located, the court held that, as a mortgagee, FNB was not reasonably identifiable to third parties in other parishes, such as Mrs. Armour in Webster Parish. Accordingly, the court held that Mrs. Armour was under no duty to notify FNB of the impending sheriffs sale and, therefore, the sheriffs sale was valid. Byrnside and Cisco (as intervenor) now appeal.
| kTHE PARTIES’ CONTENTIONS
The sole issue on appeal is the validity of the sheriffs sale. There are essentially *314 two arguments presented by Appellants urging that the sale was invalid and that the judgment of the trial court should be reversed. First, Appellants submit that it was reversible error for the trial court to hold that the mortgagee was required to follow the collateral around and record its mortgage in every parish in which the rig was moved or located. Second, Appellants point out that Mrs. Armour knew that Byrnside’s domicile was Ouachita Parish, but no search was done of the chattel mortgage records in that parish by her or the Webster Parish Sheriff. La. C.C.P. art. 2337 provides that, if the price offered by the highest bidder at the first or subsequent offering is not sufficient to discharge the costs of the sale and the security interests, mortgages, liens and privileges superior to that of the seizing creditor, the property shall not be sold. The failure to locate the chattel mortgage recorded in Ouachita Parish led to the sale of the rig for $15,000, much less than the mortgage FNB held on the chattel. Appellants assert that the sale was in violation of this article and is a nullity.
The Armour successors and SH & J first argue that the description of the rig and location where the rig was to be located as stated in the chattel mortgage are insufficient. In its brief, SH & J provides a comparison/contrast of the descriptions of the component parts of the rig contained in the chattel mortgage and the sheriffs proces verbal at the time of the sale. According to Appellees, the differences indicate that Byrnside mixed and matched the component parts to the extent that the rig seized was not the rig described in Rand covered by the chattel mortgage. Appellees further argue that the location stated as “Ouachita Parish, Louisiana, located at Smith Road” is insufficient because there is no address to designate where on Smith Road the rig would be located. Next, Appellees argue that the trial court’s finding is correct because a mortgagee must take action to protect the collateral. According to Appellees, in the case sub judice, FNB failed to protect its collateral by failing to adequately describe the drilling rig in the chattel mortgage; failing to amend the chattel mortgage as to location when the rig was moved; failing to file the chattel mortgage in the other parish(es) where the rig was moved; failing to return the rig to Smith Road, Ouachita Parish, once it knew the rig had been moved; and failing to segregate the rig from other similar rigs.

DISCUSSION

We begin our discussion with the first point made by the Armour successors and SH & J regarding the descriptions of the drilling rig and/or drilling equipment involved in this case. The two descriptions involved are as follows:
Proces Verbal description
A tandem float with rathole and kelly & swivel & kelly drive bushing
5-6" drill collars
110 joints 31/2" bottleneck drill pipe
1 mouse hole
1-3 axle low boy License No. D208836 La. Lie. With caterpillar D7 dozer-Serial No. # 48A13250
Chattel Mortgage description
No equivalent item
14-5 1/4" X 29' Drill collars
134 Joints 3&" 13.30 lb. W/2 7/8" IF Connections drill pipe
No equivalent item
No equivalent item
*315 bl single axle float with dog house-Blow out Preventor with accumulator
Fuel tank GMC 271 powered generator
Assorted hand tools elevators etc
# 50-311 tripple (sic) axle float containing Spencer Harris drilling rig, Rotary Table, Wev Wilson pipe tongs, elevator links, 3/&" elevator and slips. 12}£" bit & 3'6" sub
Martin Decker Clipper weight indicator
V-8 detroit diesel engine
1-Oil dispersing tank
Set hand rails and steps
Rotary table
Shorty block and hook # 1803
7/8" drilling line
Spencer Harris telescoping derrick
Cameron 10# Series Blowout preventor, Serial No. 117012
Lombia generator, 1 cylinder, 7 KW
Miscellaneous tools and other miscellaneous equipment
1976 Nabors Three-Axle trailer, Model FBSD, SN 24-417-FBSD3; Not contained in Proces Verbal: Spencer Harris Model 3500 Drawworks, SN 3500; Brewster Model OB-12 Rotary Table; Hacker 12" Rotary Table; pipe tongs; elevator links, 3}£" elevator and slips; 12 1/4" bit and 3'6" sub
No equivalent item
General reference to GM deisel engine
No equivalent item
No equivalent item
Brewster Model OB-12 rotary table
McKissack 30" sheave traveling block; SH 114
No equivalent item
Spencer Harris 92' derrick, SH 32
In addition, there are several items not itemized in the above comparison that are described in the chattel mortgage, but not listed on the proces verbal.
After reviewing the above comparison, we find merit in the argument that the description of the drilling rig contained in the chattel mortgage and the description or inventory of various items of drilling equipment as recited lRin the proces verbal are vastly different and, in this court’s opinion, irreconcilable.
Chattel mortgage law, as opposed to the now effective UCC articles contained in Chapter 9, applies in this case and the former statute concerning the description of chattels, La. R.S. 9:5352(A), required that “a full description of the property to be mortgaged shall be set forth so that it may be identified and its location shall be stated.” The description must be sufficient to enable third persons, aided by such reasonable inquiries, to identify the property. Domengeaux v. Daniels, 401 So.2d 655 (La.App. 3d Cir.1981). In addition, the proces verbal should exactly describe the property for sale. Bonner v. Baker, 8 La. Ann 283, 1853 WL 4102 (La.1853).
In the case sub judice, the description contained in the chattel mortgage does include serial numbers on a number of items, but also includes several entries that are very generally described, such as “[m]iseellaneous tools and other miscellaneous equipment.” The description contained in the proces verbal is more troublesome. This description contains very few *316 serial numbers and, as can be easily seen from a comparison of the two descriptions, describes equipment not found in the description in the chattel mortgage and no piece of equipment listed matches any of the items listed in the chattel mortgage description. The proces verbal description also contains vague, nonspecific descriptions such as “[assorted hand tools elevators etc” and “[s]et hand rails and steps,” among others. No reasonable person reading the description of drilling | flequipment contained in the proces verbal, as advertised in connection with the sheriffs sale, would conclude the equipment being auctioned was one and the same with the drilling rig and equipment as described in the chattel mortgage. In fact, the parties acknowledge that there are at least three component parts of the drilling rig that were seized and sold that were not included in the sale, but were located at a different location approximately a mile from Mrs. Armour’s property, i.e., the site where Byrnside “stacked” this rig and equipment.
After reviewing the contrasting descriptions in this case, each containing some specific and other very vague entries, none of which match, we find that the equipment seized and sold at the sheriffs sale was substantially different from that listed in the chattel mortgage. In order to enforce a lien against movable property, the identity of the property must be possible of establishment. If that identity is lost by uniting or commingling the movable with another movable, the lien is automatically destroyed. See In re Exclusive Industries Corporation, 41 B.R. 493 (Bankr.W.D.La.1984), citing Phillips v. Conley, 46 So.2d 650 (La.App. 2d Cir.1950)(“For the preservation of the lien and privilege, it must be possible for one, so to speak, to be able to put his hands on the specific object that was sold, and have the ability to separate it unimpaired from other objects or things with which it may be associated or to which it may be attached.”) [1] We conclude, ^therefore, that the chattel mortgage in the present case cannot be enforced against the property sold.[2]
*317 Assuming, arguendo, that the drilling rig and equipment securing the note and the drilling rig and equipment seized and sold at sheriffs sale are one and the same and, assuming that all parties had been aware of FNB’s chattel mortgage, whether by filing of the chattel mortgage in Webster Parish or otherwise, our conclusion in this case is supported by a second and significant deficiency in the description contained in the chattel mortgage. The location of the chattel as specified in the chattel mortgage was to be “Smith Road” in Ouachita Parish. Not only is this specification vague and nonspecific, it is incorrect. A statement as to the location of mortgaged movables is one of the most important elements of the description thereof. Burglass v. Manfre, 168 So. 328 (La.App.Orleans 1936). Further, the erroneous location of the mortgaged movable property is equivalent to no location at all. Id. “The proper location of the property in the act of mortgage is essential to its validity.” Id., J. Westerfield, concurring. A defect in the specified location of the movable fails to put third parties on [nnotice that the property described as being located in one parish is actually located in another parish. In re Exclusive Industries Corporation, supra. Moreover, the court, in In re Exclusive Industries Corporation, held that an inaccurate specification of location in a mortgage document is not cured by recording the document in all 64 parishes of the state. The court emphasized that, in cases of inaccurate locations, it is the notice to third parties which is critical, as opposed to the parties’ understanding that the movable will be located in various parishes. When the location is inaccurately stated in the mortgage document, unsuspecting third parties are lulled into a sense of security that property covered by the mortgage is located only in the parish specified in the mortgage. Third parties are entitled to assume the recitals in the mortgage are correct; any ambiguity or omission must be construed against the existence of the mortgage and in favor of the third party. Id. We find, therefore, that the incorrect specification of “Smith Road” in Ouachita Parish is fatal to the efficacy of the chattel mortgage as it affects third parties. In light of our conclusions as stated, we find that the sale of the drilling rig and/or equipment to SH & J was valid. All other issues raised by the parties are pretermit-ted.

CONCLUSION

For the foregoing reasons, the judgment of the trial court declaring the sheriffs sale to be valid is affirmed. Costs are assessed to Defendant/Appellants Byrn-side Drilling Company, Inc. and Cisco Petroleum, Inc.
AFFIRMED.

. We recognize that In re Exclusive Industries Corporation involved a lien on lumber which is a “mass or assemblage” and Phillips involved a lien on gas that was commingled with other gas not subject to the lien at issue in the case. While the case sub judice does not involve a "mass or assemblage” per se, we find that the principle espoused by these two cases requiring that the collateral be identifiable clearly applies to the many component parts of the drilling rig and related equipment involved herein.

. Much argument is made in the present case around this court’s decision in Young v. Squeeze Tools, Inc., 350 So.2d 967 (La.App. 2d Cir.1977). In the portion of that decision dealing with the issue of the description in a chattel mortgage, this court found no error in the lower court's finding that, where the mortgagor owned only one drilling rig, the fact that the description failed to include the serial numbers of the drilling equipment did. not destroy the validity of the chattel mortgage. As noted in Young, what constitutes sufficiency of the description is a matter to be determined in light of the circumstances of each individual case. The circumstances of the case sub judice are distinguishable from those in Young in two respects. First, there is no indication in Young that there was any discrepancy between the description contained in the chattel mortgage and the one advertised in connection with the sale and used the proces verbal in that case. Second, in Young, the specification of the location of the chattel was Iberia Parish "when not in use.” This phraseology gives notice to third parties that the chattel is going to be moved to other parishes when in use. The chattel mortgage in the present case does not contain such qualifying language; rather, the chattel mortgage states only that the chattel will be located on “Smith Road” in Ouachita Parish. Based on these distinguishing aspects of Young, we do not find it controlling on the issue of the description of the chattel.