765 So.2d 312 (2000)
COLE-MIERS POST 3619 V.F.W. OF DeRIDDER
v.
STATE of Louisiana, DEPARTMENT OF REVENUE & TAXATION, OFFICE OF ALCOHOLIC BEVERAGE CONTROL.
No. 99-C-2215.
Supreme Court of Louisiana.
January 19, 2000.
Celia R. Cangelosi, Baton Rouge, Counsel for Applicant.
Lloyd Keith Milam, De Ridder, Counsel for Respondent.
JOHNSON, J.[*]
We granted certiorari in this case because of a conflict among the circuits relative to the meaning and effect of La. R.S. 26:81 E and to determine whether the exception in La. R.S. 26:81 E permits the issuance of a liquor license in subdivisions of the state where the electors have voted to prohibit the sale of alcohol by local option election. After considering the language of the statute, the legislature's purpose in revising the Alcohol Beverage Law (La. R.S. 26: et seq.), and the history of La. R.S. 26:81, we reverse the ruling of the *313 court of appeal and hold that the exception contained in La. R.S. 26:81 E does not apply to those subdivisions of the state that have prohibited the sale of alcohol by referendum vote under La. R.S. 26:581 et seq.

FACTS AND PROCEDURAL HISTORY
A referendum election[1] was held on December 4, 1976 in Ward 3 of Beauregard Parish and the electors of that Ward voted to prohibit the sale of alcoholic beverages. Cole-Miers Post 3619, Veterans of Foreign Wars of DeRidder, located in Ward 3, applied for state permits in 1997 that would allow the sale of alcoholic beverages of both low and high alcoholic content. The Office of Alcohol and Tobacco Control ("ATC"), formerly the Office of Alcoholic Beverage Control, denied the application in accordance with La. R.S 26:81 B(1), which states in relevant part: "No permit shall be issued [to sell alcoholic beverages] by the Commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business [of selling alcohol] has been prohibited by referendum vote." La. R.S. 26:81 B(1).
Plaintiff sought judicial review in the 36th Judicial District Court. At trial, the parties submitted the referendum vote of December 1976, wherein the citizens of Beauregard Parish elected to prohibit the sale of alcoholic beverages in the area where the VFW's premises are located and the defendant's letter of denial for a state permit to sell both high and low alcoholic content beverages in that area. The district court affirmed the decision of the ATC, denying applications for a Class A[2] general beer and liquor permit because the VFW is located in an area where the sale of alcohol is prohibited.
Plaintiff filed an appeal in the Third Circuit Court of Appeal. The majority reversed the trial court concluding that the exception set forth in La. R.S. 26:81 E permitted the issuance of a Class A general beer and liquor permit despite the referendum vote to prohibit the sale of alcoholic beverages because plaintiff was a fraternal organization within the meaning of La. R.S. 26:81 E. The Third Circuit found that subsection E applied to all of the preceding subsections, A through D, reasoning that had the legislature intended the exception to apply only to certain subsections, it would have placed the exception within the subsections. Instead, the court found that E is in a separate subsection following A through D, thus, it applied to all preceding subsections. Cole-Miers Post 3619 V.F.W. of Deridder v. State of Louisiana, et al., 98-1879 (La.App. 3 Cir.7/14/99), 747 So.2d 598.
*314 We granted certiorari in this matter to determine whether the exception in La. R.S. 26:81 E permits the issuance of a liquor license in subdivisions of the state where the electors have voted to prohibit the sale of alcohol by local option election. Cole-Miers Post 3619 V.F.W. of Deridder v. State of Louisiana, et al. 99-2215 (La.9/24/99); 747 So.2d 1109.

LAW
Under the general rules of statutory construction, courts begin their review with the premise that legislation is the solemn expression of legislative will and, therefore, the interpretation of the law involves, primarily, the search for the legislature's intent. La. C.C. art. 2; Falgout v. Dealers Truck Equipment Co., 98-3150 p. 1 (La.10/19/99); 748 So.2d 399. Thus, when a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the statutory language is susceptible to more than one meaning, however, it must be interpreted as having the meaning that best conforms to the purpose of the law, and the meaning of ambiguous words must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. arts. 10 and 12; Touchard v. Williams, 617 So.2d 885, 888 (La. 1993). Thus, statutory interpretation is a matter of law and rests squarely in the hands of the judiciary. In re: the Matter of Louisiana Health Service and Indemnity Company 98-3034 p. 1 (La.10/19/99); 749 So.2d 610.
We, therefore, begin by looking to the language of the statute itself. La. R.S. 26:81 states:
A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.
* * *
C. When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, or school.
* * *
D. Outside of municipalities and unincorporated areas which are not divided into subdivisions with streets, blocks, or sidewalks, parish ordinances may extend the prohibition to a distance of five hundred feet of the church, synagogue, public library, school, or playground.
* * *
E. The prohibitions in this Section do not apply to any premises which are maintained as a bona fide hotel, or fraternal organization, nor to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.
Plaintiff argues that La. R.S. 26:81 E creates an exception to the general prohibition in 26:81 B(1) and allows for issuance of alcohol licenses to fraternal organizations within a dry area. However, reading subsection E as an exception to all of the preceding sections, A through D, would lead to absurd consequences. If applied strictly, the exception would allow a business to sell beverages of high alcohol content in areas voted dry while those same businesses would be strictly prohibited to sell beverages of low alcohol content under *315 the complete ban of La. R.S. 26:281.[3] It would be illogical to allow the sale of beverages of high alcohol content while strictly banning beverages of low alcohol content in a locality trying to restrict the sale of alcohol. These absurd results make this court look further into the real intentions of the legislature when adopting the exception of La. R.S. 26:81 E.

LEGISLATIVE HISTORY AND DISCUSSION
The Third Circuit, in disposing of this case, followed its earlier ruling in Sabine Parish Police v. Office of Alcoholic Beverage Control, et al. where they allowed an alcohol license to be issued in a Ward that had been voted dry. 94-919 (La.App. 3 Cir. 8/25/94); 643 So.2d 187. In Sabine, the Sabine River Authority applied for a Class A permit to sell beverages of high and low alcoholic content at a proposed Conference and Recreation Facility at Toledo Bend Lake. However the citizens in Sabine Parish, prior to the application, had voted to prohibit the sale of alcohol in Ward 3 of Sabine Parish by referendum vote and adoption of a local ordinance. The plaintiff argued that the prohibitions of La. R.S. 26:81 A, B, C and D did not apply because, as a bona fide hotel, 26:81 E permitted a license. The Sabine court concluded that the prohibitions set forth in La. R.S. 26:81 A, B, C and D did not apply to hotels or fraternal organizations, whether licensed before or after a referendum vote, and did not apply to premises which were licensed more than one year prior to adoption of an ordinance. This decision, therefore, allowed exceptions to the blanket ban of 26:81 B(1).
However, in O'Neal v. Jackson Parish Police Jury, the Second Circuit determined that La. R.S. 26:81 E did not provide exceptions to 26:81 B(1). 27,452 (La. App. 2 Cir. 6/21/95); 658 So.2d 240. In that case, a referendum election was held in October 1994, and the citizens of Jackson Parish voted to prohibit the sale of alcohol in that particular Ward of Jackson Parish. Plaintiffs' corporation, Green Street Enterprises, Inc., had been licensed to sell alcohol in Jackson Parish since 1983. When he applied for a license renewal, plaintiff relied on the grandfather clause provisions of 26:81 E, as he was licensed several years prior to the referendum vote. The O'Neal court concluded that the absolute prohibition set forth in 26:81 B(1) did not have exceptions, and therefore, applied to hotels, fraternal organizations, and premises licensed for more than one year prior to adoption of an ordinance.
In O'Neal v. Jackson Parish Police Jury, the Second Circuit engaged in a review of legislative history and the evolution of La. R.S. 26:81 as well as its antecedents when it determined the applicability of 26:81 E to sections A through D. See O'Neal v. Jackson Parish Police Jury, 27,452 *316 (La.App. 2 Cir. 6/21/95); 658 So.2d 240. We find the analysis proper and a guide to our analysis in the present case.
Blanket bans on the sale of alcohol via referendum vote can be found as early as 1902 in the state of Louisiana. Local governing authorities were prohibited from licensing alcohol sales in areas where the voters elected to prohibit the sale of intoxicating liquors. See 1902 La. Acts, No. 221. The election was controlling and there were no exceptions to this broad ban. This same prohibition was extended to the State by Acts 1934, No. 15 after the repeal of the 18th Amendment to the U.S. Constitution. O'Neal, 27,452, p. 7 (La.App. 2 Cir. 6/21/95); 658 So.2d at 244. Again, no exceptions were present.
This unqualified prohibition was reenacted in Act 360 of Acts 1948. Section 19 contained a blanket prohibition against the issuance of liquor licenses by the Board or any municipality or parish in areas where the sale was prohibited by referendum vote. Section 54 permitted local governing authorities to enact ordinances to prohibit alcohol sales within certain distances of churches, synagogues, libraries, schools, and the like. It also contained an exception to these ordinances for those premises that were a "bona fide hotel, railway car, fraternal organization, or a premise licensed to sell alcohol one year prior to the adoption of the ordinance." This exception applied only in those areas where alcohol sales were, otherwise, generally permitted.
When the Revised Statutes were adopted in 1950, sections 19 and 54 were combined into section 80. La. R.S. 26:80 was divided into three subsections, which read, in relevant part:
A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
B. No permit shall be issued by the board or by any municipality or parish to authorize any business in any subdivision of the state where that business has been prohibited by referendum vote.
C. Governing authorities of parishes and municipalities may enact ordinances to prohibit the conduct of alcoholic beverage businesses within a certain distance of a parish or municipal public playground or of a building used exclusively as a regular church or synagogue, public library, or school. Except a school for business education conducted as a business college. No state or local permit shall be issued in contravention of such ordinance.
In municipalities the prohibitions may not extend more than three hundred feet from the church, synagogue, library, school, or playground, or school to the nearest point of the premises licensed.
Outside of municipalities, parish ordinances may extend the prohibition to a distance of five hundred feet of the church, synagogue, library, school, or playground ... The prohibition in this Sub-Section does not apply to any premises which are maintained as a bona fide hotel, railway car, or fraternal organization, nor to any premises which has been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance. (Emphasis added).
We can see from the Acts of 1950, in those areas where alcohol was prohibited by referendum vote, there was an absolute ban on granting licenses in that area. Subsection C, however, contained an exception to ordinances promulgated by parishes and municipalities by authority of that same subsection C. The Acts of 1987, No. 696, recodified the Acts of 1950 and essentially reenacted the 1950 section 80 as the current section 81. The current section 81 contains five subsections, however, not three. Subsection A and B(1) have the same wording as their antecedents. Notably, subsection C is broken into three smaller sections, C, D, and E which encompasses the same language as their progeny, 26:80 C. When reviewing the *317 stages of subsection E on the House floor, the original bill shows:

E. The prohibitions in this Subsection does Section do not apply to any premises which are maintained as a bona fide hotel, railway car restaurant holding an "R" permit, or fraternal organization, nor to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.
This language was taken directly from the 1950 statute. But, in the final bill, section E became:
E. The prohibition in this Section do not apply to any premises which are maintained as a bona fide hotel, or fraternal organization, nor to any premises which have been licensed to deal in alcoholic beverages for a period of one year or longer prior to the adoption of the ordinance.
On authority of La. R.S. 24:253, which allows the Louisiana State Law Institute to correct "manifest typographical and grammatical errors" in legislative acts, the word "prohibitions" was substituted for "prohibition." O'Neal, 658 So.2d at 245.
This progression indicates that the Legislature was simply cleaning up an antiquated bill. The language of La. R.S. 26:81 E is taken from the Acts of 1950, 26:80 C, where one exception applies to two ordinance prohibitions: those ordinance prohibitions inside municipalities and those ordinance prohibitions outside municipalities. These prohibitions were separated into sections C and D, and the exception was further separated into its own section, section E. Clearly, this was for easier reading of the law because there is no indication that the legislature sought to add new exceptions or substantively change the previous subsections. In fact, the minutes of the House Judiciary Committee show that Mr. George F. Brown,[4] who presented the bill, stated twice that the bill was "basically a recodification and a cleanup of some extraneous language" and emphasized that "all the enforcement features [were] intact." Acts 1987, No. 696, Regular Sess., Minutes, 1987. While the Minutes do not form part of the law, they preserve the debates on proposed legislation within the House and, in this case, serve to elucidate the understanding and intent of the legislators. See Falgout, 98-3150 p. 10 n. 7 (citing Conerly v. State, 97-0871 p. 8 (La.1998), 714 So.2d 709, 714). Thus, the history of the statute shows an attempt by the legislature to maintain the original blanket ban.
Moreover, we are convinced that 26:81 E is not intended as an exception to 26:81 B(1) in light of the entire statutory scheme of Title 26. Judge Pickett, in her dissent, points out that if 26:81 E is construed as an exception to referendum votes, the statute pertaining to beverages of high alcoholic content (La. R. S.26:81) contains a blanket exception to referendum votes, while the statute pertaining to beverages of low alcoholic content (La. R.S. 26:281) does not. This difference would produce an absurd result. For example, "had the VFW sought a permit for the sole purpose of selling beer and wine coolers they could not prevail. The [Third Circuit's] interpretation of 26:81 E, however, allows them to sell whiskey." Cole-Miers Post 3619 V.F.W. of Deridder v. State of Louisiana, et al., 98-1879 p. 4 (La.App. 3 Cir.7/14/99), 747 So.2d 598 (Pickett, J., dissenting). We do not think, given the history of the statute, this was an intended result of the legislature.
Further, we note that La. R.S. 26:81 E contains an exception to an "ordinance," not to a "referendum." All of the preceding statutes contain only this exception to ordinances both inside and outside municipalities. The history of the statute shows that the legislature intended this exception to apply to ordinance prohibitions relating to distances from schools, churches, etc. and not to referendum vote prohibitions. To conclude otherwise would significantly diminish the effectiveness of local option elections. See generally La. R.S. 26:582. We believe the district court *318 and the O'Neal court were correct in their refusal to allow such an interpretation in light of the longstanding deference accorded voters. O'Neal, 658 So.2d at 245. La. R.S. 26:582, which permits voters to decide whether the sale of alcohol should be allowed, would be rendered meaningless if we allow this exception to circumvent the people's will. Surely, it was not the legislature's intent to circumvent the voters' decision and the history of the statute itself does not indicate otherwise.
Accordingly, we hold that La. R.S. 26:81 E does not provide an exception to entities located in those subdivisions of the state that have prohibited the sale of alcohol by referendum vote. Plaintiff is located in Ward 3 of Beauregard Parish, which has voted to prohibit the sale of alcohol. Under La.R.S. 26:81 B(1), alcohol permits are strictly prohibited and the ATC is prohibited from issuing a state permit for the sale of alcohol to VFW. Because the exception in 26:81 E does not apply to subdivisions of the state voted dry, we do not reach the question of whether the VFW is a fraternal organization within the meaning of La. R.S. 26:81 E.

DECREE
For the foregoing reasons, the decision of the Court of Appeal is reversed and the decision of the trial court is reinstated. We find that the exception contained in La. R.S. 26:81 E does not apply to those subdivisions of the state that have prohibited the sale of alcohol by referendum vote under La. R.S. 26:582.
REVERSED.
LEMMON, J., dissents and assigns reasons.
KIMBALL, J., dissents for reasons assigned by LEMMON, J.
CALOGERO, C.J., subscribes to the opinion and assigns additional reasons.
LEMMON, J., Dissenting.
The majority reasons that interpreting the narrow circumstances listed in La.R.S. 26:81 E as an exception to the general prohibition of the sale of alcoholic beverages in La.R.S. 26:81 A and B(1) would allow a business that qualified under Subsection E to escape Section 81B's complete ban on sales prohibited by referendum vote. That is what an exception isa case in which the general rule does not apply. While the majority states in footnote 2 that there is no exception to the ban in Subsection 81 B, Subsection 81 E expressly states that "[t]he prohibitions of this Section [the entire Section 81] do not apply to any premises" that fall under the two stated circumstances.[1] The language could hardly be clearer.
The majority may be correct that the Legislature did not intend to enact an exception when there was a general prohibition of sales of alcoholic beverages established by referendum. However, this court's function is to look first at what the Legislature said. This court may look at legislative intent only if the language is not clear, and no ambiguous language exists in the present case.
The effect of the majority's decision is to change the word "Section" in La.R.S. 26:81 E to "Subsections C and D." While the Legislature has the power to correct its prior mistaken enactment (if there was a mistake), this court does not.
I would affirm that portion of the decision of the court of appeal that holds Subsection 81 E is an exception to the prohibitions in Subsections 81 A and 81 B(1). I would then proceed to determine whether plaintiff is a fraternal organization within the contemplation of Subsection 81 E.
CALOGERO, Chief Justice, subscribes to the opinion and assigns additional reasons.
When a law is clear and unambiguous, and its application does not lead to absurd consequences, it shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9.
*319 Applying reason and effect, one must conclude that La.Rev.Stat. 26:81 would indeed lead to an absurd consequence if applied as written. Surely the legislature did not intend to except "a bona fide hotel, [] fraternal organization, [or] premises that have been licensed to deal in alcoholic beverages one year or longer prior to adoption of the ordinance," when the electorate votes by referendum to prohibit the sale of alcoholic beverages. No similar exception exists in La.Rev.Stat. 26:281, regulating beverages of low alcoholic content.
It is a settled principle of statutory interpretation that the language of a statute should not be given a literal meaning if doing so would result in absurd consequences not contemplated by the legislature. See Sutherland Stat. Const. § 46.02 (5th ed.). Because I find that application of La.Rev.Stat. 26:81 E as written would lead to an unintended and illogical consequence, it is fitting and proper that this court should look to the intent of the legislature to determine the statute's true meaning, i.e., "the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; see also Sutherland Stat. Const. § 46.02 (5th ed.). Moreover, there can be no doubt of the legislature's intent, given the history of this particular statute.
NOTES
[*] KNOLL, J., not on panel. Rule IV, Part 2, § 3.
[1] La. R.S. 26:582 gives authority to subdivisions of the state to hold a referendum election in order to "to determine whether or not the business of selling alcoholic beverages shall be conducted and licensed." The election can be held no more than once every two years.
[2] La. R.S. 26:71.1 defines Class A permits. It states in relevant part:

(1) Class A-General:
(a) A Class A-General retail permit shall be issued only to a retail outlet where beverage alcohol is sold on the premises for consumption on the premises by paying customers. Such an establishment must be equipped with a permanent wet bar equipped with a non-movable sink and a backbar or similar equipment for public display and to inform the public of brands and flavors offered for sale.
(b) A Class A-General retail establishment shall be staffed by a bartender whose primary duty is to open and/or prepare beverage alcohol products for consumption on the premises by paying customers, or prepared with an appropriate lid or cover on the container for take out service. Such an establishment must meet all state and local health and zoning requirements as set forth by the state and by parishes and municipalities where a Class A-General retail outlet is located.
(c) Repealed by Acts 1995, No. 1016, S 2.
(d) A Class A-General retail permit shall be issued only to an establishment where the state law provides that no person under the age of eighteen years is allowed on the premises except as provided in R.S. 26:90(A)(8)(a).
[3] La. R.S. 26:281 regulates permits to sell beverages of low alcoholic content. Section B contains a blanket prohibition against the issuance of permits in those subdivisions of the state that have voted themselves dry. There is no exception to this ban.

La. R.S. 26:281 states in relevant part:
A. No permit shall be granted under this Chapter in contravention of any municipal ordinance adopted pursuant to the zoning laws of the state.
B. No permit shall be issued by the commissioner or local authorities to authorize the conduct of business in any subdivision of the state wherein that business has been prohibited by referendum vote.
C. (1) When prohibited by municipal or parish ordinance no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, or school.
* * *
(2) The commissioner shall not deny any applicant located outside a municipality a permit based on the distance requirements of this Subsection, if the parish governing authority and the organization that operates the public playground or owns the building used exclusively as a church or synagogue, public library, or school waive opposition to the applicant's permit.
* * *
[4] Mr. George F. Brown is a member of the Beer Industry League of Louisiana in Baton Rouge, Louisiana. He is listed as a witness in the minutes on June 9, 1987.
[1] La.R.S. 26:81 E excepts, from the general prohibition of La.R.S. 26:81 B(1), certain premises under the following separate circumstances: (1) when the premises are maintained as a bona fide hotel or as a fraternal organization, and (2) when the premises were licensed one year or more before the prohibitory ordinance was adopted. Since the second exception refers specifically to ordinances, that second exception arguably does not apply when the prohibition is by referendum. However, the first of the two separate exceptions contains no reference to either ordinance or referendum and apparently applies no matter how the prohibition was established.