873 So.2d 636 (2004)
STATE CIVIL SERVICE COMMISSION
v.
DEPARTMENT OF PUBLIC SAFETY DIRECTOR, et al.
No. 2003-CA-1702.
Supreme Court of Louisiana.
April 14, 2004.
*637 Frank G. DeSalvo, New Orleans, Charles C. Foti, Jr., Atty. Gen., Charles H. Braud, Jr., Ann E. Wall, Francine Weaker,
*638 Willie E. Broome, Baton Rouge, Counsel for Applicant.
Robert R. Boland, Jr., Counsel for Respondent.
JOHNSON, Justice.
We are called upon in this case to determine whether LSA-R.S. 33:2218.2(A)(2)(a), as enacted by the Louisiana Legislature, infringes upon the exclusive constitutional powers granted to the State Civil Service Commission. After a thorough review of the record, applicable statutes, legislative history, and jurisprudence, we affirm the Court of Appeal's ruling that the statute is unconstitutional because it infringes upon the exclusive authority of the Civil Service Commission to regulate compensation for state classified employees.
FACTS and PROCEDURAL HISTORY
This suit was filed by the Civil Service Commission following the enactment of LSA-R.S. 33:2218.2(A)(2)(a) on July 1, 1999. The disputed statute at issue reads as follows:
(2)(a) Every sworn, commissioned law enforcement officer employed on a full-time basis by a bona fide police agency of the state or its political subdivisions, other than the Department of Public Safety and Corrections and the Department of Wildlife and Fisheries, and headquartered in a municipality with a population in excess of four hundred fifty thousand, and who serves the welfare of the public in the capacity of a police officer by providing police services to the general public through effecting arrests, issuing citations, serving warrants, patrolling levees, waterways, and riverfront areas or while patrolling bridges that are within the boundaries of a municipality with a population in excess of four hundred fifty thousand shall be paid by the state extra compensation in the amount of three hundred dollars per month in addition to the compensation now paid to him by his employer out of self-generated revenue attributable to the agency employing such officers. To be eligible for the extra compensation, each such law enforcement officer shall have completed one year of service, and any such law enforcement officer hired after March 31, 1986, shall also have completed and passed a council-certified training program, as provided in R.S. 40:2405.
(b) For purpose of qualifications, computations, and other applicable provisions of this Section, references to "municipality" and "municipal" shall include in their meaning the bona fide police agency of the state or its political subdivisions that employ full-time sworn, commissioned law enforcement officers made eligible in this Paragraph.
On October 23, 1999, three months following the enactment of LSA-R.S. 33:2218.2(A)(2)(a), the Legislature sought to pass a constitutional referendum that would amend LSA-Const. Art. 10, Section 10(A)(1)the article that embodies the duties and powers of the Civil Service Commissionto provide the legislature with the authority to grant a supplemental pay raise to the Port of New Orleans Harbor Police. The referendum read,
Nothing herein shall prevent the Legislature from supplementing police department uniform pay plans from any available funds of the state, the department, the agency, or the political subdivision, provided that such supplement may be made available only for sworn, commissioned law enforcement officers employed on a full time basis by such police department who serve the welfare of the public, in their capacities as police officers, by providing police services to *639 the general public, by affecting arrests, issuing citations, and serving warrants while patrolling levees, bridges, waterways and riverfronts.
That referendum was rejected by the voters. However, the referendum was not tied to the passage of LSA-R.S. 33:2218.2(A)(2)(a), and the defendants, Port of New Orleans Harbor Police Officers applied to the Department of Public Safety and Corrections Supplemental Pay Board for the pay increase.
The Civil Service Commission responded to the actions of the Port of New Orleans Harbor Police Officers by filing a Petition for Preliminary and Permanent Injunction and Declaratory Judgment which sought injunctive relief to prohibit the payment of the pay raise authorized by LSA-R.S. 33:2218.2(A)(2)(a) by the Director of the Department of Public Safety. On July 24, 2002, without assigning written reasons, the trial court held that the subject statute was in fact constitutional and therefore, denied the Civil Service Commission's petition. The Civil Service Commission appealed this ruling to the First Circuit Court of Appeal.
On May 9, 2003, the First Circuit Court of Appeal reversed the trial court's ruling and held that the statute was indeed unconstitutional because it represented an infringement on the constitutional grant of powers given to the Civil Service Commission. State Civil Service Commission v. Director of the Department of Public Safety, et al., XXXX-XXXX (La.App. 1 Cir. 5/9/03), 849 So.2d 602. Specifically, the Court of Appeal held that: (1) the statute violated the exclusive authority of the Civil Service Commission to regulate the compensation of state classified employees, as provided by LSA-Const. Art. 10, Section 10(A)(1); (2) that the legislature did not have the authority to enact LSA-R.S. 33:2218.2(A)(2)(a) pursuant to the minimum wage exemptions for firemen and municipal policemen found in LSA-Const. Art. 6, Section 14(B)(5) and discussed by this Court in New Orleans Firefighters Association v. Civil Service Commission of City of New Orleans, 82-C-0025 (La. 1982), 422 So.2d 402. The Court of Appeal concluded that unlike the Firefighters case, where there was a specific constitutional exemption for firemen and municipal policemen, there was no corresponding constitutional amendment for the Port of New Orleans Harbor Police; and (3) that LSA-R.S. 33:2218.2(A)(2)(a) was not a reasonable exercise of the Legislature's police powers. Defendant, Robert Hecker, Chief of Port of New Orleans Harbor Police, et al., appealed the judgment of the First Circuit Court of Appeal.
Subsequent Referendum
It should be noted that on November 5, 2002, the voters did approve a constitutional amendment. The pertinent part of the amendment reads as follows:
(3)(a) The legislature shall provide by law for the payment by the state of supplements to salaries of full-time local law enforcement and fire protection officers of the state. Beginning with the fiscal year which begins July 1, 2003, the legislature shall appropriate funds sufficient to fully fund the cost of such state supplement to the salaries of full-time law enforcement and fire protection officers. LSA-Const. Art. 7, section 10(D)(3)(a).
The Historical Notes to LSA-Const. Art. 7, section 10 state that "a proposal to add subpar. (D)(3) to Const. Art. 7, section 10 was submitted to the electors of the state of Louisiana and ratified by them at the statewide election held November 5, 2002."
Intervenor, The Fraternal Order of Police, argues that as a result of the November 2002 constitutional amendment, the statute now spells out that the Harbor *640 Police are eligible for the supplemental pay. The Fraternal Order of Police argues that "(t)he Constitution now expressly authorizes the supplemental pay without the blessings of Civil Service for the class of protectors of the public safety covered by the Statute." In opposition, the State Civil Service Commission argues that this statute provides no authority for the legislature to provide supplemental pay to the Port of New Orleans Harbor Police because the amendment specifically refers to "local" police officers and the Port of New Orleans Harbor Police are not local police officers, but are police officers of the state serving as state classified employees.
The First Circuit Court of Appeal held that the State Civil Service Commission's appeal "was not rendered moot by the passage of a constitutional amendment which expressly granted the legislature power to provide such supplemental pay, where the constitutional amendment had a later effective date and, thus, was not yet effective." State Civil Service Com'n v. Director of Dept. of Public Safety, XXXX-XXXX (La.App. 1 Cir. 5/9/2003), 849 So.2d 602. We agree.
DISCUSSION and ANALYSIS
The function of statutory interpretation and the construction to be given to legislative acts rests with the judicial branch of government. Pepper v. Triplet, XXXX-XXXX (La.1/21/04), 864 So.2d 181. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. Art. 9. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. LSA-C.C. Art. 12.
Under the general rules of statutory construction, courts begin their review with the premise that legislation is the solemn expression of legislative will, and, therefore, the interpretation of the law primarily involves the search for the legislature's intent. Cole-Miers Post 3619 V.F.W. of De Ridder v. State, Department of Revenue & Taxation, Office of Alcoholic Beverage Control, 1999-2215 (La.1/19/00), 765 So.2d 312. However, legislative intent is not the appropriate starting point for statutory interpretation. Rather, the appropriate starting point is the language of the statute itself. In re Louisiana Health Service and Indem. Co., XXXX-XXXX (La.10/19/99), 749 So.2d 610, 615.
In the instant case, the Legislature amended LSA-R.S. 33:2218.2 by adding a new paragraph (A)(2)(a), which inter alia grants full-time law enforcement officers who provide police services to the general public through "... patrolling levees, waterways, and riverfront areas or while patrolling bridges" in a municipality with a population in excess of four hundred fifty thousand "shall be paid by the state extra compensation in the amount of $300.00 per month in addition to the compensation now paid ..."
The purpose and intent of LSA-R.S. 33:2218.2(A)(2)(a) is clear and unambiguous. The Board of Commissioners of the Port of New Orleans has the statutory authority to regulate the commerce and traffic of the port and harbor. LSA-R.S. 34:21,[1] et seq. Port of New Orleans Harbor *641 Police are "Peace Officers" and have all the power of Sheriffs as Peace Officers in all places and on all premises under the jurisdiction and control of the Board of Commissioners of the Port of New Orleans, and of the streets and approaches thereto. Op.Atty.Gen., No. 99-39, August 2, 1999. Clearly, the legislature, by enacting LSA-R.S. 33:2218.2(A)(2)(a), intended to grant supplemental pay, or extra compensation, to the Port of New Orleans Harbor Police. Thus, the issue for this Court is not to search for the legislative intent of LSA-R.S. 33:2218.2(A)(2)(a), but to determine its constitutionality.
Constitutional scrutiny favors the statute. State v. Griffin, 1308, 86-KA-0944 (La.1986), 495 So.2d 1306. Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. State v. Hart, 95, 96-0599 (La.1/14/97), 687 So.2d 94. In its exercise of the entire legislative power of the state, the legislature may enact any legislation that the state constitution does not prohibit. Louisiana Public Facilities Authority v. Foster, XXXX-XXXX (La.18/01), 795 So.2d 288; Meredeth v. Ieyoub, XXXX-XXXX (La.9/9/97), 700 So.2d 478. The legislature of this state, unlike Congress, which can do nothing that the Federal Constitution does not authorize, may do everything that the Louisiana Constitution does not prohibit. Bozant v. Campbell, 9 Rob. 411, 1845 WL 1357 (La.1845). Because a state statute is presumed constitutional, the party challenging the statute bears the burden of proving its unconstitutionality. State v. Griffin, supra, at 1308. To hold legislation invalid under the state constitution, it is necessary to rely upon some particular constitutional provision that limits the power of the legislature to enact the statute appealed. Civil Service Commission of the City of New Orleans v. William J. Guste, 82-C-2611 (La.1983), 428 So.2d 457; New Orleans Firefighters Association v. Civil Service Commission of the City of New Orleans, supra.
In the present case, the State Civil Service Commission argues that LSA-Const. Art. 10, Section 10(A)(1)[2] limits the power *642 of the Legislature to grant supplemental pay, or extra compensation, to state classified employees, such as the Port of New Orleans Harbor Police. Among the Civil Service Commission's powers and duties enumerated in LSA-Const. Art. 10, Section 10(A)(1) is the responsibility to fix "compensation and disbursements" for state classified employees and to adopt a "uniform pay and classification plan." The Commission asserts that it has the exclusive and plenary authority to regulate those areas delegated to it by statute, although the word "exclusive" is absent from the statute. Moreover, the State Civil Service Commission likens its powers to those granted to the Public Service Commission.
The powers and duties of the Public Service Commission are contained in LSA-Const. Art. 4, Section 21(B)[3], and although there is no use of the word "exclusive" in this section, this Court, in Bowie, et al. v. Louisiana Public Service Commission, 92-CA2236, 92-CA2237 (La.1993), 627 So.2d 164, 166. held that LSA-Const. Art. 4, Section 21(B) "delegates to the Public Service Commission the exclusive and plenary power to regulate all common carriers and public utilities. The Commission's power in this regard is as complete in every respect as the regulatory power that would have been vested in the Legislature in the absence of Article IV, Section 21(B)." Thus, the State Civil Service Commission argues that it is axiomatic that it also has the exclusive and plenary power to regulate those areas under its authority, in as complete a manner as would the Legislature in the absence of LSA-Const. Art. 10, Section 10(A)(1).
Additionally, the State Civil Service Commission argues that there is a line of jurisprudence that establishes its exclusive authority to regulate the state classified service. In Louisiana Civil Service League, et al. v. Forbes, et al., 258 La. 390, 246 So.2d 800, 807 (1971), overturned for other reasons, this court held that, "it is the opinion of this court that the mandate of the people evidenced a clear intent, as reflected by their constitution, to invest the State Civil Service Commission with the sole and exclusive authority to establish all rates of compensation paid to civil service personnel, subject only to the routine approval of the Governor of this State." The First Circuit, in Thoreson, et al. v. Department of State Civil Service, et al., 433 So.2d 184, 190 (La.App. 1st Cir. 1983), writ denied, 440 So.2d 726 (1983), while referring to exceptions to the Commission's authority to establish uniform pay and classification plans, held that "the debate surrounding the State Police amendment and the amendment concerning the wildlife officers, further shows that the intent of the framers was that these be exceptions to the exclusive power of the Commission to establish a uniform pay and classification plan for classified employees, *643 subject only to the approval of the Governor."
Similarly, in New Orleans Firefighters Association Local 632 v. City of New Orleans, 91-0969,(La.1991), 590 So.2d 1172, 1175, this Court held that the City Civil Service Commission has "the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1) and the city governing authority cannot constitutionally infringe on the Commission's exercise of this power." In sum, the State Civil Service Commission argues that "there is no more clearer principle in Louisiana constitutional law than that the State Civil Service Commission has authority exclusive to that of the Legislature to regulate compensation for state classified employees such that the Legislature may not give a raise in pay to state classified employees."
Conversely, Appellants, Robert Hecker, Chief of the Port of New Orleans Harbor Police, et al., argue that while the Constitution limits the plenary power of the Legislature regarding a "uniform pay plan" it does not limit the Legislature's plenary power to grant civil service employees "supplemental pay." Thus, Appellants make a distinction between "uniform pay" and "supplemental pay." Furthermore, appellants argue that because LSA-Const. Art. 10, Section 10(A)(1) fails to state that the Commission's power is "exclusive," then the Legislature, not the Civil Service Commission, has the authority to legislate this area. We now address both the "supplemental pay" and "exclusivity" arguments separately.
Exclusivity of Commission's powers
The Legislative history and jurisprudence regarding the authority of the Civil Service Commission indicates that its enumerated powers and duties were meant to be exclusive. The Louisiana Constitution has detailed provisions for the Civil Service Commission since 1952. Provisions for the Commission were placed in the Constitution so that the system could only be repealed or modified by a vote of the people, thereby removing the system from the control of a temporary majority of the Legislature. New Orleans Firefighters Association Local 632, AFL-CIO, et al. v. City of New Orleans, supra, at 1175, FN2, quoting 3 Projet of a Constitution for the State of Louisiana 572 (1954). The delegates to the 1973 Constitutional Convention adhered to this theme by rejecting an amendment that would have allowed the Legislature by a two-thirds vote to change the nature and powers of the Commission. Id. quoting, 9 Records of the Louisiana Constitutional Convention of 1973: Convention Transcript pp. 2595, 2633.
In Strickland v. State, Office of the Governor, 525 So.2d 740, 743 (La.App. 1st Cir.1988), the First Circuit Court of Appeal acknowledged that LSA-Const. Art. 10, Section 10 failed to state that the Civil Service Commission had "exclusive" authority. However, the court held the following:
Article X of the constitution evidences an intention to grant exclusive jurisdiction to the Commission in those areas where the Commission has exercised its `broad and general rule-making' power. Unless that jurisdiction is exclusive, the orderly fashion of resolving employer-employee related disputes will be disrupted if the employee can forum shop between the Commission and the courts.
Similarly, the First Circuit Court of Appeal, in Leger v. Louisiana State University, 601 So.2d 20, 21 (La.App. 1st Cir.1992), held that:
Pursuant to La. Const. Art. 10, Sect. 10 the Commission has the authority to administer and regulate matters such as *644 compensation and reductions in pay. The Commission has exclusive jurisdiction in areas where the Commission has exercised its broad rule-making powers.
Also, this Court in Lafleur v. City of New Orleans, 943-944, 01-3224 (La.14/4/02), 831 So.2d 941, held that "a city civil service commission has the exclusive power to adopt rules regulating the classified service in the areas specifically enumerated in Section 10(A)(1), and the city governing authority cannot constitutionally infringe on the commission's exercise of this power." This holding was also cited by this Court in Civil Service Commission of the City of New Orleans v. The City of New Orleans, 02-1812 (La.9/9/03), 854 So.2d 322, 328, and in Firefighters, supra, at 1175. Thus, the exclusive authority of the Civil Service Commission over areas specified in LSA-Const. Art. 10, Section 10(A)(1) is established by both the legislative history of the Civil Service Commission and the jurisprudence interpreting Section 10(A)(1).
Supplemental Pay
Likewise, the legislative intent and jurisprudence regarding the Civil Service Commission's authority to regulate "compensation and disbursements" and to adopt a "uniform pay and classification plan," as provided by LSA-Const. Art. 10, Sect. 10(A)(1), indicate that the Civil Service Commission also has the exclusive authority to regulate supplemental pay.
A plain reading of LSA-Const. Art. 10, Section 10(A)(1), indicates that the Civil Service Commission has the exclusive authority to regulate "compensation and disbursements" for state classified employees. "Compensation" is identified in LSA-Const. Art. 10, Section 10(A)(1), as an area to be regulated by the Civil Service Commission. Similarly, "compensation" appears in LSA-R.S. 33:2218.2(A)(2)(a), which, inter alia, grants Port of New Orleans Harbor Police "extra compensation in the amount of three hundred dollars per month in addition to the compensation now paid to him."
Furthermore, previous courts have recognized "supplemental pay" as part of compensation. This court in Firefighters, supra, at 413, stated that "Our courts have consistently held in a variety of contexts that state supplements are to be considered as part of the overall level of compensation due to employees." In Hebbler v. New Orleans Fire Department, 310 So.2d 113, 115 (La.1975), this Court held that state supplemental pay was part of a fireman's salaries and wages. Also, in Latino v. City of Bogalusa, 9822 (La.App. 1st.Cir.1974), 295 So.2d 560, the First Circuit Court of Appeal held that city policemen were entitled to have their overtime pay computed not only on the basis of their city salary but also with the inclusion of their supplemental pay. Therefore, "compensation," as identified in LSA-Const. Art. 110, Section 10(A)(1), is inclusive of both uniform pay and supplemental pay, and subject to the Civil Service Commission's exclusive authority to regulate.
Next, Appellants, Harbor Police, and Intervenor, the Fraternal Order of Police, and the Attorney General, argue that LSA-Const. Art. 6, Section 14, and this Court's decision in Firefighters, supra, provide an exception to the Civil Service Commission's authority to regulate compensation for the Harbor Police.
The pertinent part of LSA-Const. Art. 6, Section 14 reads as follows:
Section 14. (A) No law or state executive order, rule, or regulation requiring increased expenditures for any purpose shall become effective within a political subdivision until approved by ordinance enacted, or resolution adopted, by the governing authority of the affected political *645 subdivision or until, and only as long as, the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided, or until a law provides for a local source of revenue within the political subdivision for the purpose and the affected political subdivision is authorized by ordinance or resolution to levy and collect such revenue and only to the extent and amount of such revenue. This section shall not apply to the school board.
(B) This section shall not apply to:
(5) A law providing for civil service, minimum wages, hours, working conditions, and pension and retirement benefits, or vacation or sick leave benefits for firemen and municipal policemen.
Appellants, argue that this Court, in Firefighters, supra, held that state supplemental pay for firemen was outside the Civil Service Commission's authority and that state supplemental pay for firemen did not infringe on the Commission's powers.
Intervenor, the Fraternal Order of Police, asserts that the disputed statute in the present case, like the supplemental pay statute in Firefighters, falls under the "minimum wage" power of the Legislature as codified in LSA-Const. Art. 6, Section 14, and that if "the `minimum wage' power of the Legislature was broad enough in 1982 to include a supplemental pay statute, it is broad enough now." Also, Intervenor argues that the supplemental pay statute in the present case is necessary because of the grossly inadequate salary earned by the Port of New Orleans Harbor Police. Further, Intervenor asserts that if the plenary power of the Legislature includes supplemental pay for firefighters and policemen paid by a municipality as an exception to Article 6, Section 14, "it easily includes supplemental pay to firefighters and policemen who are paid by another political subdivision of the state."
The Attorney General argues that this Court addressed LSA-Const. Art. 6, section 14, when deciding Firefighters, and that the court's broad interpretation of the "minimum wage" portion of the statute allowed for the ruling that the Legislature could set supplemental pay for firemen and municipal police. Further, the Attorney General argues that what is meant by the designation "municipal police" is unclear. The Attorney General stated the following,
The Harbor Police, which the supplemental pay raise at hand benefits, definitely provide a municipal service to all of the Port of New Orleans, the major water thoroughfare into the United States, and it can be argued that they are municipal even though the municipality itself does not pay them. Art. VI, section 14 of the Constitution protects groups, such as the harbor police, who are in fact paid by other political subdivisions outside their municipality. The legislature is better attuned to coordinate these political subdivisions in order to assure that these policemen get their fair share in the area of salary and pay increase.
In opposition, the State Civil Service Commission distinguishes the Firefighters case from the present matter. First, the State Civil Service Commission argues that Firefighters addressed the fixing of a minimum wage, not supplemental pay, as in the present case. Second, the State Civil Service Commission argues that Article 6, Section 14 allows the Legislature to enact minimum wage and working standards for firemen and municipal policemen and that the Port of New Orleans is not a municipality. The State Civil Service Commission states,
*646 The term `municipal is specifically defined in Article VI, Section 44(3) as meaning `an incorporated city, town, or village.' The Port of New Orleans is established and empowered at R.S. 44:1, et seq. and while those statutes do not identify the Port as any particular type of entity, it is certainly not a city, town, or village of the state.
Thus, the Civil Service Commission argues that appellants reliance on Firefighters is misplaced.
We agree that LSA-Const. Art. 6, Section 14 and Firefighters, supra, are inapplicable to the case sub judice. LSA-Const. Art. 6, section 14 was adopted by the 1973 constitutional convention and approved by Louisiana voters. Firefighters, supra, at 407. Convention debate focused on the Legislature's authority over minimum wages and working conditions of firemen and municipal policemen (those areas specified in Section 14(B)(5)). Id. The statute was adopted by a vote of 85 to 30, including the legislative authority over minimum wages and working conditions of firemen and municipal policemen. Id. at 408. This provision is an exception to the overall intent of the statute, which is that "legislation increasing a political subdivision's employee benefits shall not become effective until approved by its governing authority or until the legislature appropriates funds for the purpose." Id. at 406.
LSA-Const. Art. 6, Section 14 was interpreted by this court in Firefighters, supra. In Firefighters, a class action suit was filed by the New Orleans Firefighters Association Local 632 AFL-CIO and several of its members against the City Civil Service Commission. The Firefighters sought to have their supplemental pay included in their overtime wage computations. Id. at 405. The issue before this Court was the allocation of power between the Legislature and the Civil Service Commission in establishing minimum wages and overtime wages for New Orleans' firemen. Id. at 404-405. This Court concluded that the disputed statute was not an attempt by the Legislature to fix salaries or to amend a civil service pay plan but a good faith effort to set a floor under wages and a ceiling over hours pursuant to a statewide public policy. Id. at 414. In reaching its conclusion, this Court reviewed the purpose and legislative history of LSA-Const. Art. 6, Sect. 14.
In interpreting the purpose of the statute, this Court held the following:
There is nothing in the wording of Art. 6, section 14 that restricts the power of the legislature to enact minimum wage and working condition laws for firemen. On the contrary, this power is expressly reserved to the legislature as an exception to the provision's restraint upon laws increasing the financial burden of political subdivisions. Id. at 407.
In Firefighters, this court reviewed the 1973 constitutional convention proceedings in determining the legislative intent of the statute. It was noted that "the record of the convention proceedings indicates that the legislature's power to set minimum wage and labor standards prevailed because of the obviously compelling state interest in providing citizens with more effective police and fire protection." Id. at 409. Further, this Court determined that the "driving force in retaining the legislative prerogative was a widely perceived need for state government to address vigorously the problems of rising crime, riots and other public disorders which had become prevalent in the 1960's and early 1970's." Id. Thus, this Court held that the Civil Service Commission was not free to ignore the legislative commandment of LSA-Const. Art. 6, Section 14 to include supplemental pay in calculating overtime pay for firemen as the commandment was *647 embodied in the scheme for minimum wages for fire fighters and is a valid exercise of the Legislature's plenary power.
The supplemental pay statute in Firefighters was upheld because of the express provision of LSA-Const. Art. 6, Section 14(B)(5) that exempted firemen and municipal policemen. In the present case, there is no corresponding constitutional provision excepting the Harbor Police who have stipulated that they are employed in the state classified civil service as state classified employees. Thus, appellants are outside of the scope of Firefighters and Article 6, Section 14(B)(5), because they are state classified employees and not municipal policemen.
Lastly, Intervenor, the Fraternal Order of Police, argue that the Civil Service Commission's authority does not limit the Legislature's prerogative to deal with public safety. Public safety is of vital interest and concern to the citizens of Louisiana, particularly in an age of international terrorism, according to Intervenor. In support of their claim, Intervenor make the following arguments:
If the State gave the Harbor Police supplemental pay to compensate them for their vital role in protecting the Port and the State in the current terrorist threat, no one could possibly object. The fact that the Legislature amended the supplemental pay statute before 9/11 should make no difference at all. The State's police powers should include the power to anticipate a threat. The State should not have to wait until the Port is destroyed to enact legislation to protect it!
This argument was soundly rejected by the First Circuit Court of Appeal in the instant case, State Civil Service Commission, supra, at 607. The First Circuit noted that,
The defendants presented no empirical data nor other documentation to prove that the legislation was passed in response to heightened security needs in the area of the Port of New Orleans, nor has it been shown that due to the lack of sufficient compensation, there has been an inability to maintain a sufficient, active police force to patrol the Port of New Orleans.
Further, the Court added,
The defendant's assertion in brief appears to be a blatant attempt to bootstrap the traumatic events of recent years to the otherwise unconstitutional action of the legislature in enacting legislation in derogation of the authority of the Commission, as pronounced in La. Const. Art. X, section 10(A)(1).
We are sympathetic to the economic plight of Louisiana's police officers, particularly during a time of increasing threats to our nation's shores and borders. However, like the Court of Appeal before us, we conclude that defendant's argumentthat the disputed statute at issue is a constitutional exercise of the Legislature's police powersis without merit. Inalienability of police power does not preclude its delegation to municipalities and other governmental subdivisions as those entities are also part of the total government of the state. City of New Orleans v. Board of Commissioners of the Orleans Levee District, 93-C-0690 (La.7/5/94), 640 So.2d 237. The people of the State through their constitution may vest and define police powers in municipalities and other governmental subdivisions. Id. at 250. The Louisiana Constitution granted exclusive powers to the Civil Service Commission. Those powers should be upheld and not abridged by this Court.
CONCLUSION and ORDER
We conclude that LSA-R.S. 33:2218.2(A)(2)(a) is unconstitutional, because *648 in enacting said law, the Legislature infringed upon the constitutional powers of the Civil Service Commission that can only be abridged by constitutional amendment. Further, the Port of New Orleans Harbor Police are state classified employees, and not municipal policemen, and therefore they are outside the purview of the constitutional exceptions found in LSA-Const. Art. 6, Section 14 and in the Firefighters case. Defendants' argument that the statute is a constitutional exercise of the Legislature's police powers is without merit. Therefore, the judgment of the Court of Appeal is AFFIRMED.
CALOGERO, C.J., additionally concurs with reasons.
CALOGERO, Chief Justice, additionally concurring.
I agree with the majority's conclusion that La.Rev.Stat. 33:2218.2(A)(2)(a), which established a supplemental pay increase for Port of New Orleans Harbor Police Officers, unconstitutionally infringes on the exclusive powers of the Louisiana Civil Service Commission to "adopt a uniform pay and classification plan." La. Const. art. X, § 10(A)(a) (1974). In fact, I expressed that same conclusion in my dissent from this court's recent denial of the writ application in Fraternal Order of Police v. City of New Orleans, XXXX-XXXX (La.10/3/03), 862 So.2d 960. In that case, plaintiffs, Fraternal Order of Police Crescent City Lodge No. 2 and others (hereinafter referred to collectively as "FOP"), sought a judgment ordering defendant, City of New Orleans, to pay New Orleans policemen additional wages allegedly due under a 1928 amendment to La. Const. art. XIV, § 25 (1921). My dissent in that case fully sets forth my position that no valid law or Constitutional authority supported FOP's claims because the provision relied upon by FOP never became statutory after the adoption of the 1974 Louisiana Constitution because it conflicted with the Civil Service Commission's constitutionally-granted exclusive authority. Thus, I would have granted the writ application filed by the City in that case.
The majority now embraces the exact argument I set forth in Fraternal Order of Police in order to affirm the court of appeal's finding in this case that La.Rev.Stat. 33:2218.2(A)(2)(a) unconstitutionally granted a supplemental pay increase to the New Orleans Harbor Police in violation of the Civil Service Commission's exclusive power. Because the majority has now adopted the conclusion I espoused in that earlier case, I agree with the decision in this case.
NOTES
[1] LSA-R.S. 34:21. Rights and powers of board in general.

A. (1) The board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.
(2) However, such regulation of such commerce and traffic including international commerce in the parish of St. Bernard shall be governed by the provisions of R.S. 34:1701 et seq.
B. It shall be the duty of the board:
(1) To have charge of, and administer the public wharves, docks, sheds, and landings of the port of New Orleans which are owned and operated, or which may be purchased, acquired, or operated by the board.
(2) To construct new wharves and other structures when necessary.
(3) To erect sheds and other structures on such wharves and landings.
(4) To place and keep these wharves and landings, sheds, and other structures in good condition.
(5) To maintain proper depths of water at all such wharves and landings.
(6) To provide mechanical facilities for the use of such wharves, landings, sheds, and other structures.
(7) To provide light, water, police protection, and any other services for such wharves, landings, and sheds, as it may deem advisable.
(8) To finance erect, and operate all basins, locks, canals, and warehouse elevators.
(9) To charge for the use of all facilities administered by it, and for all services rendered by it, such fees, rates, tariffs, or other charges as it may establish.
[2] LSA-Const. Art. 10, Section 10. Rules; Investigations; Wages and Hours

Section 10. (A) Rules. (1) Powers. Each commission is vested with broad and general rulemaking and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; to require an appointing authority to institute an employee training and safety program; and generally to accomplish the objectives and purposes of the merit system of civil service is herein established. It may make recommendations with respect to employee training and safety.
[3] LSA-Const. Art. 4, Section 21. Public Service Commission

Section 21. (B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.