WELCH, J.
 

 |2Thomas D. Gilmore, Jr., the father of Allison Lee Gilmore, who is deceased, appeals a judgment sustaining the peremptory exceptions raising the objection of prescription filed by both defendants, Carol Whited and Grace Episcopal Church (“Grace”), and dismissing Mr. Gilmore’s action to exhume and relocate the remains of Allison. For the following reasons, we reverse in part and affirm in part the judgment of the trial court and remand for further proceedings.
 

 I. FACTUAL AND PROCEDURAL HISTORY
 

 On November 26, 2007, Mr. Gilmore filed a petition seeking to exhume Allison’s remains, which were interred in Grace’s cemetery, and to have her remains transferred to another burial space in the same cemetery. Grace, as the cemetery authority,
 
 [1]
 
 and Ms. Whited, Allison’s mother, were named as defendants in the action. In his petition, Mr. Gilmore alleged that in April or May of 2005, Allison passed away, but because he was estranged from his daughter and divorced from Ms. Whited, he did not learn of Allison’s death until the following year. Mr. Gilmore further alleged that when he learned of Allison’s death, he also learned that she was buried, without his consent or permission, in Grace’s cemetery in a burial plot that was owned by him and was adjacent to the burial plot of his father, Thomas D. Gilmore, Sr. Mr. Gilmore further alleged that since it was his desire that he be buried next to his father and since his burial space was taken from him without his consent, he had offered to purchase another burial plot in Grace’s cemetery and to have Allison’s remains transferred to that space. However, both Ms. Whited and Grace refused; therefore, he commenced these proceedings in accordance with La. R.S. 8:659(A)(3), seeking a judgment ordering the defendants to remove Allison’s remains from her current burial space, to transfer her remains to another space in Grace’s cemetery, and to restore his property rights in his burial |3space. Additionally, Mr. Gilmore alleged that he had suffered mental anguish over this situation and, therefore, requested judgment for “all just and reasonable damages under the circumstances,” plus legal interest from the date of judicial demand and attorney fees.
 

 In response to this petition, Ms. Whited filed a peremptory exception raising the objections of prescription and no cause of action, and Grace filed a peremptory exception raising the objections of prescription, no cause of action, and no right of action. After a hearing on January 9, 2008, the trial court rendered judgment sustaining the peremptory exceptions raising the objection of prescription filed by Ms. Whited and Grace pursuant to La. R.S. 8:658; noticing, on its own motion, the objection of non-joinder of a party under
 
 *299
 
 La. C.C.P. art. 641; finding that both the peremptory exceptions raising the objection of no cause of action filed by Ms. Whited and Grace and the peremptory exception raising the objection of no right of action filed by Grace were moot because of its ruling on prescription and non-join-der of a party; and dismissing Mr. Gilmore’s petition at his cost. A written judgment in conformity with the trial court’s ruling was signed on April 26, 2008. From this judgment, Mr. Gilmore has appealed.
 

 II.ASSIGNMENT OF ERRORS
 

 On appeal, Mr. Gilmore raises four assignments of error that present seven issues for this court’s review. These can be summarized as: (1) whether the trial court erred in interpreting La. R.S. 8:658 as a prescriptive statute and in applying it to this case; (2) whether the trial court erred in sustaining the peremptory exceptions raising the objection of prescription filed by Ms. Whited and Grace; and (3) in light of the trial court’s erroneous interpretation of La. R.S. 8:658, whether the trial court erred in noticing, on its own motion, the objection of non-joinder of |4a party under La. C.C.P. art. 641.
 
 [2]
 

 III.STANDARD OF REVIEW
 

 Generally, the trial court’s factual findings on a peremptory exception raising the objection of prescription, such as the date on which prescription begins to run, are reviewed on appeal under the manifest error-clearly wrong standard of review.
 
 See Webb v. Blue Cross Blue Shield of Louisiana,
 
 97-0681, p. 6 (La.App. 1st Cir.4/8/98), 711 So.2d 788, 792. However, in this case, the issue of whether Mr. Gilmore’s action under La. R.S. 8:659 was prescribed involves the proper application and interpretation of La. R.S. 8:658. The proper application and interpretation of a statute is a question of law.
 
 See Pittman v. Magic City Memorial Company,
 
 2007-1567, p. 4 (La.App. 1st Cir.3/26/08), 985 So.2d 156, 158, and
 
 Cleco Evangeline, LLC v. Louisiana Tax Comm’n,
 
 2001-2162, p. 3 (La.4/3/02), 813 So.2d 351, 353. Therefore, on review, this court must initially determine whether the trial court was legally correct or legally incorrect in its interpretation of the statute and in its application of that statute to this case.
 
 See Pittman,
 
 2007-1567 at p. 4, 985 So.2d at 158, and
 
 Cleco Evangeline, LLC,
 
 2001-2162 at p. 3, 813 So.2d at 353.
 

 IV.LAW AND DISCUSSION
 

 A. Prescription
 

 Since Mr. Gilmore’s petition sought both an order to move Allison’s remains pursuant to La. R.S. 8:659 and damages, we will address the issue of prescription in relation to both of those actions separately.
 

 1. Louisiana Revised Statutes 8:659
 

 Once the human remains of a deceased person have been buried in a cemetery, those remains may not be removed unless the requirements of La. R.S. |s8:659 have been met. Louisiana Revised Statutes 8:659 provides:
 

 A. The remains of a deceased person may be moved from a cemetery space to another cemetery space in the same cemetery or to another cemetery with the consent of the cemetery authority and the written consent of one of the following, in the order named, unless
 
 *300
 
 other directions in writing have been given by the decedent:
 

 (1) The surviving spouse, if no petition for divorce has been filed by either spouse prior to the death of the decedent spouse.
 

 (2) The surviving adult children of the decedent, not including grandchildren or other more remote descendants.
 

 (3) The surviving parents of the decedent.
 

 (4) The surviving adult brothers and sisters of the decedent.
 

 B. If the required consent cannot be obtained, a final judgment of the district court of the parish where the cemetery is situated shall be required.
 

 Under this statute, before Allison’s remains could be disinterred and transferred, the necessary consent of Ms. Whited, as a surviving parent, and Grace, as the cemetery authority, had to be obtained. Therefore, when Ms. Whited and Grace refused to voluntarily give their consent to exhumation and removal of Allison’s remains, the sole authority to order the disinterment and transfer of her remains became vested by law in the trial court.
 
 [3]
 

 2. Louisiana Revised Statutes 8:658
 

 However, both Ms. Whited and Grace asserted, and the trial court agreed, that Mr. Gilmore’s action to disinter Allison’s remains under La. R.S. 8:659 was prescribed pursuant to the provisions set forth in La. R.S. 8:658. However, Mr. Gilmore asserted that by its own terms and title, La. R.S. 8:658 is not a prescrip-five statute, and the trial court erred in interpreting it as such.
 

 The appropriate starting point for statutory interpretation is the language of the statute itself.
 
 State Civil Service Commission v. Department of Public Safety Director,
 
 2003-1702, p. 5 (La.4/14/04), 873 So.2d 636, 640. Louisiana Revised Statutes 8:658 was enacted by 1974 La. Acts, No. 417, § 1, and currently provides that “[n]o action shall lie against any cemetery authority relating to the remains of any person which have been left in its possession for a period of sixty days, unless a written contract has been entered into with the cemetery authority for the care of such remains.”
 
 [4]
 

 Under the general rules of statutory construction, courts begin their review with the premise that legislation is the solemn expression of the legislative will, and therefore, the interpretation of law primarily involves the search for the legislative intent.
 
 State Civil Service Commission,
 
 2003-1702 at p. 5, 873 So.2d at 640. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9. When the words of a law are ambiguous, them meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
 

 First and foremost, we note that by its terms, La. R.S. 8:658 is directed solely to actions “against any cemetery authority.” In this case, there is no dispute that
 
 *301
 
 Ms. Whited is not a cemetery authority, and thus, this statute is not applicable to Mr. Gilmore’s claim against Ms. Whited. Therefore, we find that the trial court legally erred in determining that Mr. Gilmore’s action under La. R.S. 8:659 against Ms. Whited was prescribed pursuant to La. R.S. 8:658.
 

 With regard to Grace, the cemetery authority, after examining the language of La. R.S. 8:658 in its entirety, we find that it is ambiguous. For instance, the sixty-day time period set forth therein could be interpreted as a time period that |7must pass
 
 before
 
 an action against a cemetery authority in possession of remains can be brought,
 
 ie.
 
 “No action shall lie against any cemetery authority relating to the remains ... for a period of sixty days.” But it can also be interpreted as a time period for which possession of remains by a cemetery authority will serve to
 
 bar
 
 an action against it relating to those remains,
 
 ie.,
 
 “No action shall he against any cemetery authority relating to the remains ... left in its possession for a period of sixty days.”
 

 Because we have determined that La. R.S. 8:658 is vague, the meaning of its words must be sought by examining the context in which they occur and the text of the law as a whole. Although we recognize that the title of a statute is not the law, we can look to the title of a statute to get a general understanding of the meaning of a statute’s words or to decide the context in which a word in the statute is used.
 
 Dufrene v. Video Co-Op and Louisiana Workers’ Compensation Corporation,
 
 2002-1147, p. 11 (La.4/9/03), 843 So.2d 1066, 1073;
 
 Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board,
 
 586 So.2d 1354 (La. 1991). The title of La. R.S. 8:658 is “Liability for damages; limitation.” Neither the title of La. R.S. 8:658 or the language of the statute itself speaks of prescription or a time period within which a party must file a claim against a cemetery authority. Rather, judging from its title, the purpose of this statute appears to protect or limit a cemetery authority’s liability for
 
 damages
 
 relating to the remains of a person.
 

 Furthermore, in 2003, the legislature changed the time period set forth in La. R.S. 8:658 from one year to sixty days.
 
 See
 
 2003 La. Acts, No. 1243, § 1. The Digest prepared by the House Legislative Services contained a summary of the amendment to La. R.S. 8:658 by Act 1243. It stated, in pertinent part, as follows:
 

 Prior law
 
 provided that no action shall lie against any cemetery authority relating to remains which have been left in its possession for a period of one year, unless a written contract has been entered into | sfor the care of such remains.
 
 New law
 
 changes the
 
 prior law
 
 by reducing the time period in which the cemetery may possess the remains
 
 before
 
 taking action
 
 from
 
 one year
 
 to
 
 60 days. (Italicized emphasis added).
 

 Although the Digest is not part of the actual legislative instrument, the use of the phrase “before taking action” in the summary suggests that the legislature’s intent was that the stated time period was a time period that a cemetery authority could possess remains prior to any action against it relating to the remains, unless there was a written contract for the care of the remains. If the legislature intended for the cemetery authority to be able to possess the remains for a requisite time period
 
 before
 
 action could be taken against it, then it would be illogical for the legislature to also intend that such action be brought
 
 within
 
 that same time period.
 

 Accordingly, while we have determined that La. R.S. 8:658 is ambiguous, when the context of the statute, its legislative sum
 
 *302
 
 mary related to the 2003 amendment, and its title are considered, we do not find that the sixty-day time period could be interpreted, as the trial court did, as a prescriptive period or a time period within which any action against a cemetery authority relating to the remains of a person must be brought. To do so would require us to read into the statute language that was not included or intended by our legislature. As such, we find that La. R.S.
 
 8:658
 
 was intended to govern the time period during which the remains of a person could be left in the possession of a cemetery authority before an action could be brought against the cemetery authority regarding those remains; it is not a prescriptive period for an action seeking relief under La. R.S. 8:659.
 
 [5]
 
 Accordingly, the trial court erred in determining that Mr. Gilmore’s action pursuant to La. R.S. 8:659 against Grace was prescribed pursuant to La. R.S. 1^8:658.
 

 3. Damages
 

 In Mr. Gilmore’s petition, he also alleged that as a result of the actions of Ms. Whited and Grace in burying Allison without his consent in the cemetery plot owned by him and adjacent to his father, he had suffered mental anguish for which he was entitled to damages, attorney fees, and legal interest. In the peremptory exceptions ;raising the objection of prescription filed by Ms. Whited and Grace, they argued that, to the extent that Mr. Gilmore’s petition alleged tortious conduct by them would that entitle Mr. Gilmore to damages, such claims were prescribed pursuant to La. C.C. art. 3492.
 

 Ordinarily, the party urging an exception raising the objection of prescription has the burden of proving facts sufficient to support the exception.
 
 Cichirillo v. Avondale Industries, Inc.,
 
 2004-2894, 2004-2918, p. 5 (La.11/29/05), 917 So.2d 424, 428. However, if the action is prescribed on the face of the petition, the burden shifts to the plaintiff to show that the action has not prescribed.
 
 Id.; see also In Re Medical Review Panel for Claim of Moses,
 
 2000-2643, p. 6 (La.5/25/01), 788 So.2d 1173, 1177.
 

 In this case, the prescriptive period applicable to any claim for alleged tort damages, for which Ms. Whited and Grace would be liable, is a liberative prescription of one year for delictual actions set forth in La. C.C. art. 3492.
 
 [6]
 
 According to the allegations in Mr. Gilmore’s petition, Allison died and was buried in Grace’s cemetery in April or May of 2005. He also alleged that one year' following her death and burial (or in April or May of 2006), he discovered that she had died and that she was buried, without his consent, in the cemetery plot owned | Tnby him and adjacent to his father. Thus, Mr. Gilmore’s action for damages, filed on November 26, 2007, more than one year from the date he discovered her death and burial, was prescribed on its face. Accordingly, on the trial of the ex
 
 *303
 
 ception, Mr. Gilmore had the burden of proving that, with regard to his action for damages, prescription was either interrupted or suspended. The record before us is devoid of any such evidence. Accordingly, we find that, to the extent that Mr. Gilmore’s petition also alleged a cause of action for tort damages due to the conduct of either Ms. Whited or Grace, the trial court correctly sustained the peremptory exception raising the objection of prescription, and we hereby affirm that part of the judgment of the trial court.
 

 B. Non-Joinder
 

 After sustaining the peremptory exceptions raising the objection of prescription pursuant to La. R.S. 8:658, the trial court determined:
 

 Since the action against Grace has been prescribed and that action is dismissed, Grace cannot be maintained as a party. Complete relief cannot be accorded to a party under the provisions of [La. C.C.P. art.] 641. Grace can’t be joined and the peremptory exception [raising the objection] of non-joinder as to Ms. Whited is sustained. And I will note for the record that the Court may notice that particular exception, which I do.
 

 Thus, it appears that the trial court’s reason for noticing the objection of nonjoinder of a party under La. C.C.P. art. 641 on its own motion was the dismissal of Grace from the proceedings based on prescription. However, because we have determined that, as to Mr. Gilmore’s suit pursuant to La. R.S. 8:659, the trial court erred in sustaining the objection of prescription pursuant to La. R.S. 8:658, it follows that the trial court also erred in noticing the objection of non-joinder of a party under La. C.C.P. art. 641 on its own motion.
 

 V. CONCLUSION
 

 For all of the above and foregoing reasons, we reverse that portion of the April 25, 2008 judgment, insofar as it sustains the peremptory exception raising the _J_nobjection of prescription filed by Ms. Whited and Grace, dismisses Mr. Gilmore’s claims under La. R.S. 8:659, and notices the peremptory exception raising the objection of non-joinder of a party pursuant to La. C.C.P. art. 641 on its own motion. However, we affirm that portion of the April 25, 2008 judgment, insofar as it sustains the peremptory exception raising the objection of prescription filed by Ms. Whited and Grace and dismisses Mr. Gilmore’s .tort claims against Ms. Whited and Grace. This matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
 

 All costs of this appeal are hereby assessed equally to the plaintiff/appellant, Thomas D. Gilmore, Jr., and the defendants/appellees, Carol Whited and Grace Episcopal Church.
 

 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 

 McCLENDON, J., Concurs.
 

 [1]
 

 .
 
 See
 
 La. R.S. 8:1(9).
 

 [2]
 

 . We note that several of Mr. Gilmore’s issues presented for review were neither submitted to the trial court nor addressed by its judgment. Therefore, those issues numbered 5 and 6 are not properly before this court.
 
 See
 
 Uniform Rules — Courts of Appeal Rule 1-3. We further note that these issues formed no part of the trial court’s decision.
 

 [3]
 

 . It is undisputed that the trial court in this case is the "district court of the parish where the cemetery is situated” under La. R.S. 8:659(B).
 

 [4]
 

 . When originally enacted. La. R.S. 8:658 provided that no action shall lie against any cemetery authority relating to remains which have been left in its possession for a period of one year, unless a written contract has been entered into for the care of such remains. 2003 La. Acts, No. 1243, § 1 changed the time period from one year to sixty days.
 

 [5]
 

 . We note that in
 
 Taggert
 
 v.
 
 Our Lady Queen of Heaven Catholic Church,
 
 2004-1331 (La.App. 3rd Cir.2/2/05), 893 So.2d 1001,
 
 writ denied,
 
 2005-0569 (La.4/29/05), 901 So.2d 1072, and
 
 Savell v. Affiliated Enterprises, Inc.,
 
 26, 359 (La.App. 2nd Cir. 12/7/94), 647 So.2d 465, our brethren in the Third and Second Circuits held that La. R.S. 8:658 is clear and unambiguous and prescriptive in nature. We respectfully disagree with the analysis by the Third and Second Circuits in those cases.
 

 [6]
 

 . Louisiana Civil Code article 3492 provides: "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained. It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage.”