PETTIGREW, J.
h Plaintiff appeals from a judgment of the trial court, denying her request for a preliminary injunction and dismissing her claims for damages against all named defendants. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
Plaintiff, Stacey Adler, was an employee of the Town of White Castle for 24 years; for 17 years, she held the appointed position of Town Clerk. According to the record, Ms. Adler became involved in a payroll fraud investigation in 2014 conducted by the Town’s CPA firm against the Assistant Town Clerk, Monica Hamilton. Also in 2014, White Castle Mayor Gerald Jermarr Williams ran for re-election, under the mistaken belief that Ms. Adler was not supporting his candidacy. Mayor Williams won re-election, and, on December 31, 2014, both Ms. Adler and her mother (another employee of the Town of White Castle) received notice, signed by Mayor Williams, that their employment was terminated, effective January 2,2015.[1]
Ms. Adler testified that on January 2, 2015, she reported to Town Hall and returned her keys, her mother’s keys, and her uniforms. She also destroyed her Town of White Castle credit card in front of two other Town of White Castle employees. Ms. Adler then collected her personal belongings and left Town Hall.' Ms. Adler received a second letter dated January 5, 2015, changing her effective termination date as follows:' “There was an error in your termination letter of December 31, 2014. This is your notice that yoúr services are no longer required at the expiration of your term, at 6:00 pm on January the 20, 2015, the first regular, meeting of the board of aldermen |2succeeding a regular election.”[2] Thereafter, at the January 20, 2015 meeting, the Board of Aldermen considered Mayor Williams’ recommendation of Ms, Hamilton for Town Clerk, and Ms. Hamilton was appointed by a unanimous vote,
Ms. Adler' filed suit' against Mayor Williams, individually and in his official *508 capacity as Mayor; the Board of Aldermen, in its official capacity; and, individually, the Board of Aldermen’s members, Barbara O’Bear, Chris Landry, Elliot Martin, Kipp Knight, and Shalanda Allen, requesting preliminary and permanent injunctions, a declaratory judgment, a writ of mandamus, and, in the alternative, damages. Ms. Adler alleged in her petition that on January 20, 2015, Mayor Williams and the Board of Aldermen acted in violation of La. R.S. 42:11 et seq. (“Open Meetings Law”) and La. R.S. 23:967 (“Louisiana’s Whistleblower Statute”). According to Ms. Adler’s petition, the regular meetings of the mayor and the board of aldermen for the Town of White Castle were required to be held at 6:00 p.m. on the third Monday of each month. Thus, the meeting following the re-election of Mayor Williams and the new board of aldermen for the year 2015 should have been held on January 19,2015. In addition to the injunctive and declaratory relief, Ms. Adler sought damages, attorney fees, and court costs.
The preliminary injunction was heard over a period of three days, March 4, 17, and 18, 2015, at which time the trial court heard from numerous witnesses and considered various documents that were introduced into evidence. During the testimony of Mayor Williams, there was an objection by defense counsel to a line of questioning concerning whether Ms. Adler was fired due to retaliation because she was a whis-tleblower. After discussion with the parties, whereby counsel for Ms. Adler agreed to save any evidence concerning Louisiana’s Whistleblower Statute for the merits of the case, the trial court sustained the objection.
13At the close of Ms, Adler’s case, defense counsel moved for a dismissal under La. R.S. 23:844, arguing that, because Ms. Adler failed to meet all six factors necessary for an injunction to issue in a case involving a labor dispute, an injunction was not warranted. The trial court initially took the matter under advisement, ordering the parties to submit briefs on the issue and the applicable law. However, just two days later, the trial court issued a ruling dated March 20, 2015, denying defendants’ motion for involuntary dismissal, concluding as follows:
[Ujpon reflecting on the arguments and evidence heard in open court, this Court now feels confident that it can make a decision without the need of entertaining memoranda on the issue. After hearing the Defendants’ argument in favor of involuntary dismissal, the Plaintiffs argument in opposition thereto, and three days of evidence and argument in open court, this Court finds that the Plaintiff has presented more than sufficient evidence on its case-in-chief to establish its claim by a preponderance of the evidence.
Thereafter, the parties appeared before the trial court on May 5, 2015, at which time the trial court addressed a request made by defense counsel that written reasons be provided for the trial court’s denial of defendants’ motion for dismissal. After some discussion about whether this request was timely, the trial court reiterated its belief that Ms. Adler had presented her case and that dismissal would be improper. Defense counsel again urged the trial court to consider the six factors set forth in La. R.S. 23:844, arguing that Ms. Adler had not proven all of the required factors for the issuance of an injunction. The trial court subsequently vacated the March 20, 2015 ruling denying defendants’ motion for dismissal and heard arguments from both sides on the issue. At the close of the hearing, the trial court instructed the parties to submit briefs on the issue and *509 indicated that its decision would be forthcoming.[3]
On July 16, 2015, the trial court issued the following “Ruling,” dismissing Ms. Adler’s claims:
This matter came before this Court in May of 2015, at which time the parties presented both evidence and argument in open court. | /Thereafter, this Court took this matter under advisement and both parties submitted several post trial memoranda. Having considered the arguments and evidence in open court, along with the post trial memoranda, this Court makes the following ruling.
While the evidence presented raises some suspicion as to whether the Plaintiff was properly terminated, this Court finds that the evidence presented fails to meet the Plaintiffs burden of proof.
Therefore, this Court hereby DISMISSES the Plaintiffs claims for damages against all named defendants for the foregoing reasons and for reasons stated in the Defendants’ post-trial memoranda.
Judgment to be submitted accordingly.
On August 3, 2015, Ms. Adler filed a motion for suspensive appeal from the trial court’s July 16, 2015 ruling.[4] The record contains a proposed judgment titled, “Judgment Dismissing Plaintiffs Claims For Damages.” Across this proposed judgment, the trial court made the following notation on August 20, 2015: “Judgment rejected by Court per objections by counsel for Adler. If parties cannot agree on a proper jmt.a hearing should be requested per motion in open court.” Subsequently, on December 17, 2015, the trial court signed a judgment, which provides, in pertinent part, as follows:
After hearing, reviewing, and taking under advisement, all the evidence, arguments, and several post-trial memo-randa submitted by the parties in .this matter, and based on the Court’s finding that the law and the evidence are in favor of the Defendants: The Town of White Castle, Mayor Gerald “Jermarr” Williams, Alderman Barbara O’Bear,- Alderman Broderick Christoff Landry, Alderman Elliot Martin, Alderman Kip Knight, and Alderman Shalanda Allen; and, against Plaintiff, Stacey Adler, with *510 prejudice, for the reasons set forth in this Honorable Court's written Ruling dated July 16,2015:
IT IS ORDERED, ADJUDGED, AND DECREED that the Plaintiffs preliminary injunctive relief is hereby denied;
JJT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Plaintiffs cause of action for violations of Louisiana Revised [Statute] Title 33, The Lawrason Act, is hereby denied; and
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Plaintiffs cause of action for violations of Louisiana Revised Statute Title 42, Open Meetings law, is hereby denied; and
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED the Plaintiff shall pay all court costs incurred by the Defendants in this proceeding.
Ms. Adler has appealed, assigning error to the trial court’s judgment as follows:
1. [The] District Court erred in applying La. R.S. 23:844[5] ... to this case when it was not alleged that this was a claim for worker’s compensation.
2. The District Court erred dismissing the claims of Ms. Adler using La. R.S. 23:844 and failing to address violations of improper termination in violation of Open Meetings La. R.S. 42:11 laws and the Lawrason Act La. R.S. 33:321.
| fi3. The District Court erred in finding the evidence presented fails to meet the Plaintiffs burden of proof for injunctive relief for open meetings laws.
4. [The] District Court erred in not declaring the actions of the Mayor in violation of open meetings laws and Lawra-son act and finding that La. R.S. 23:844 *511 has any application to the facts and causes of actions to the claims raised by [Ms.] Adler in the summary proceeding.
DISCUSSION
On appeal, Ms. Adler argues that the trial court erred in its reliance on La. R.S. 23:844 in this case. She notes that all of the cases, cited by defendants in their memoranda in support of the application of La. R.S. 23:844 to the injunctive relief requested in this matter concerned unionized labor disputes of collective bargaining agreements and that no such labor dispute is at issue in this case.- Thus, Ms. Adler maintains, La. R.S. 23:844 cannot legally or logically be applicable herein. Defendants counter that based on the definition of “labor dispute” found in Title 23, the relief that Ms. Adler is seeking from her former employers qualifies as a labor dispute and, thus, falls under the purview of La. R.S. 23:844. Defendants further argue that Ms. Adler’s position on this issue is contrary to her petition for damages in that she cites to Title 23 in support, of her claim for whistleblower status. We have reviewed the applicable law and jurisprudence and agree with Ms. Adler that La. R.S. 23:844 is not applicable herein,.,
The instant case involves the proper application and interpretation of La. R.S. 23:844, which is a question of law, Cleco Evangeline, LLC v. Louisiana Tax Com’n, 2001-2162, p. 3 (La. 4/3/02), 813 So.2d 361, 363. We review the matter de novo, and render judgment on the record. Id, Therefore, this court must initially determine whether the trial court was legally correct or legally incorrect in its interpretation of La. R.S. 23:844 and in its application of that statute to this case. Gilmore v. Whited, 2008-1808, p. 4 (La.App. 1 Cir. 3/31/09), 9 So.3d 296, 299.
Statutory interpretation is the province of the judiciary. We have long held that the paramount consideration in interpreting a statute is ascertaining the legislature’s intent and the reasons that prompted the legislature to enact the law. Legislative intent is -the fundamental question in all cases of statutory interpretation; rules of statutory construction are designed to ascertain and enforce the intent of the statute. Theriot v. Midland Risk Insurance Company, 95-2896, p. 3 (La. 6/20/97), 694 So.2d 184, 186. One particularly helpful 'guide in ascertaining the intent of the legislature is the legislative history of the statute in question and related legislation. Laws aré presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject. We give harmonious effect to all acts on a subject when reasonably possible. Theriot, 96-2896 at 4, 694 So.2d at 186.
The starting point in the interpretation of any statute is the language of the statute itself. Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners, 2004-1674, p. 6 (La. 2/4/06), 894 So.2d 326, 330. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be ápplied as written, and its letter shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. A statute shall be construed to give meaning to the plain language of the statute, and courts may not extend statutes to situations that the legislature never intended to be covered. Munden v. State, Div. of Admin., 2001-2326, p. 4 (La.App. 1 Cir. 6/9/03), 849 So.2d 639, 641, writ denied. 2003-1532 (La. 10/3/03), 865 So.2d 310.
A reading of Act. No. 203 of 1934, by which the legislature enacted La. R.S. 23:821-849 (commonly referred to as “Little Norris-LaGuardia Acts”), provides insight into the overall spirit behind the *512 ■legislation. Louisiana’s Little Norris-La-Guardia Act was patterned after the federal statute passed in 1932, the Norris-La-Guardia Act, which “was a direct response to judicial encroachment on the national policy which favored the protection of the right of labor unions to function free of governmental interference.” Gerald J. Dai-gle, Jr., “The Court Adds Life to the Little Norris-LaGuardia Act,” 27 Loyola L. Rev. 1215, 1216-1217 (1981). “Clearly, the intent of the Little Norris-LaGuardia Act was to protect the labor unions -of Louisiana from the abusive use of labor injunctions.” Id. at 1217-1218. As the Louisiana Supreme Court acknowledged in Davis v. Henry, 555 So.2d 457, 459 (La.1990), following the passage of the Norris-LaGuardia Act, federal courts were “restrained in issuing injunctions by the requirement that specific findings of |sfact must be made before issuance of either a temporary or permanent injunction in a labor dispute.”
When all of the provisions of Act. No. 203 are considered together,, it is evident the intent of the Louisiana Legislature in enacting the Little Norris-LaGuar-dia Act was to address the potential for abuse of injunctive relief in cases involving striking laborers. Our conclusion concerning the legislative intent behind Louisiana’s Little Norris-LaGuardia Act is further supported by the title of Act No. 203, which states: “To prevent the improvident issuance of injunctions and temporary restraining orders; to define and limit the jurisdiction of the courts issuing the same, and to declare the public policy of the State of Louisiana regarding labor controversies, yellow dog contracts and the use of collective bargaining.”[6]
Moreover, while defendants correctly point out on appeal that Title 23 is entitled “Labor and Workers’ Compensation” and addresses legal issues that fall within the parameter of employment law, each of the fifteen chapters within Title 23 covers a different area of employment law. We note that La. R.S. 23:844 appears in Chapter 8, Part II of Title 23 under the headings, Labor and Workers’ Compensation, Labor Organizations and Labor Disputes, Injunctions in Labor Disputes in General. (Emphasis added.) Whereas, Louisiana’s Whistleblower Statute, La. R.S. 23:967, which Ms. Adler cites in her petition as support for hér claim for wrongful termination, appears in Chapter 9, Part III of Title 23 under the headings, Labor and Workers’ Compensation, Miscellaneous Provisions, Interference with Individual Rights. (Emphasis added.)
Based on our review of the statutes and the legislative history, it is clear that La.' R.S. 23:844 was never intended for application to a case such as the one before us now. As pointed out by Ms. Adler on appeal, La. R.S. 23:821-849 lend themselves to direct application to eases concerning unionized labor disputes of collective bargaining agreements, not to the injunctive relief she seeks. Thus, the trial court erred in applying |flLa. R.S. 23:844 to the facts of this case. However, our inquiry does not end here as Ms. Adler argues that her motion for preliminary injunction in this matter was governed by La. Code of Civ. P. art. 3601 et seq.
An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. La. Code Civ. P. art. 3601(A). Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or dam *513 age if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Sorrento Companies, Inc. v. Honeywell Intern., Inc., 2004-1884, p. 9 (La.App. 1 Cir. 9/23/05), 916 So.2d 1156, 1163, writ denied, 2005-2326 (La. 3/17/06), 925 So.2d 541. A showing of irreparable harm is not required in cases where the conduct sought to be restrained is unlawful, as when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law. Jurisich v. Jenkins, 99-0076, p. 4 (La. 10/19/99), 749 So.2d 597, 599. The issuance of a preliminary injunction addresses itself to the sound discretion of the trial court and will not be disturbed on review unless a clear abuse of discretion has been shown. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 2004-0270, p. 5 (La.App. 1 Cir. 3/24/05), 906 So.2d 660, 663.
The writ of injunction, a harsh, drastic, and extraordinary remedy, should only issue in those instances where the moving party is threatened with irreparable loss or injury, and is without an adequate remedy at law. Conway v. Stratton, 434 So.2d 1197, 1198 (La.App. 1 Cir.1983). Irreparable injury has been interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Giauque v. Clean Harbors Plaquemine, L.L.C., 2005-0799, p. 6 (La.App. 1 Cir. 6/9/06), 938 So.2d 135, 140, writs denied, 2006-1720, 2006-1818 (La. 1/12/07), 948 So.2d 150, 151. A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. The courts have generally held that a preliminary 11ftinjunction is designed to preserve the status quo pending a trial of the issues on the merits of the case. Silliman Private School Corp. v. Shareholder Group, 2000-0065, pp. 5-6 (La.App. 1 Cir. 2/16/01), 789 So.2d 20, 23, writ denied, 2001-0594 (La. 3/30/01), 788 So.2d 1194.
Applying the foregoing legal precepts to the facts of this case, we find that thé denial of a preliminary injunction was clearly warranted in this case. Ms. Adler’s suit is a suit for damages based on her alleged wrongful termination. While there was testimony at the hearing below regarding the facts surrounding Ms. Adler’s alleged wrongful termination and the actions of Mayor Williams and the Board of Aldermen at the January 20,2015 meeting, Ms. Adler made no showing of irreparable injury, loss, or damage whereby she would be entitled to injunctive relief in the form of a preliminary injunction. Thus, we find no abuse of discretion in the trial court’s denial of Ms. Adler’s request for a preliminary injunction.
However, we find that the trial court did err in dismissing Ms. Adler’s claims for violations of the Open Meetings. Law, Louisiana’s Whistleblower Statute, and the Lawrason Act. In addition to seeking a preliminary injunction, Ms. Adler also requested a permanent injunction. A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. Concerned Citizens for Proper Planning, LLC, 2004-0270 at 6, 906 So.2d at 664. The principal demand of the permanent injunction is determined on its merits only after a full trial under ordinary process, even though the summary proceedings for the preliminary injunction may touch upon or tentatively decide issues on the merits. Ouachita Parish Police Jury v. American Waste and Pollution Control Co., 606 So.2d 1341, 1346 (La.App. 2 Cir.), writ denied. 609 So.2d 234 (La.1992), cert. de *514 nied. 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993). A permanent injunction may issue only after a trial on the merits at which the burden of proof is a preponderance of the evidence. City of Baton Rouge/Parish of East Baton Rouge v. 200 Government Street, LLC, 2008-0510, p. 5 (La.App. 1 Cir. 9/23/08), 995 So.2d 32, 36, writ denied. 2008-2554 (La. 1/9/09), 998 So.2d 726.
InWhile in some cases' the merits of an action may be decided during an interlocutory proceeding, this is only “where the parties have expressly agreed to submit the case for final decision at the hearing on the rule for a preliminary Injunction.” Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 n. 9 (La.1979); see also Arbour v. Total CATV, Inc., 400 So.2d 1155, 1156 (La.App. 1 Cir.), writ denied sub nom. Arbour v. Total Catv, Incorp., 404 So.2d 264 (La.1981) (“It is clear that the Louisiana Supreme Court will not allow the trial of a rule for a preliminary injunction to replace a trial on the merits, in the absence of such a stipulation by the parties, no matter how thoroughly the merits have been treated, even by the court of appeals.”)
In the instant case, thei-e is no indication that the parties agreed to dispose of the entirety of the case during the preliminary injunction proceedings. In fact, before the beginning of testimony on March 4, 2015, the trial court emphatically stated, “This is a preliminary injunction, it is not a full blown trial on the merits. It will be limited.” Furthermore, the transcript of the preliminary injunction hearing is riddled with references by the trial court and counsel for Ms. Adler and defendants evidencing their intent that the hearing was solely for the purpose of considering Ms. Adler’s request for a preliminary injunction. And, at the May 5, 2015 hearing, the trial court again emphasized, “we need to be mindful that [what] we have here is a preliminary injunction.”
We acknowledge that after defense counsel moved for involuntary dismissal on March 18, 2015, there was some discussion on the record about whether the trial court could ultimately make a final ruling in the case. The trial court then asked the parties to submit briefs in support of their respecr tive positions on the motion for involuntary dismissal and instructed them to include a discussion about whether any decision rendered could be converted into a final decision. However, the record is void of any agreement concerning same and neither of the parties’ briefs appears in the record. Thus, based on the facts and circumstances we have before us now, the trial court unquestionably erred in disposing of the merits of Ms. Adler’s case.
11 ¡.CONCLUSION
For the above and foregoing reasons, we affirm, on different grounds, the trial court’s denial of Ms, Adler’s request for a preliminary injunction. We reverse the trial court’s denial of Ms. Adler’s causes of action for violations of the Lawrason Act, Open Meetings Law, and Louisiana’s Whistleblower Statute. We remand this matter to the trial court for further proceedings consistent with this opinion. All costs associated with this appeal are divided equally between the parties.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. The December 31, 2014 letter to Ms. Adler provided as follows: “This is your notice that your services are no longer required. Please return all keys and property of the Town of White Castle to T own Hall on January 2, 2015 and retrieve your personal belongings.”

. According to the record, Mayor Williams was advised by his attorney that there had been a mistake in the .first letter with regard to the termination date. The January 5, ¿015 letter contained similar language about returning all keys and property of the Town of White Castle to Town Hall and retrieving her personal belongings, but instructed Ms. Adler to do so by January 20, 2015, at 6:00 P.M. The record is clear that although Ms. Adler never returned to her position as Town Clerk after January 2, 2015, she was fully compensated for all wages owed by the Town of White Castle;

. Defendants filed a memorandum in support of their position concerning the applicability of La. R.S. 23:844 on May 19, 2015, which appears in the record before us. Although it is apparent from the trial court's subsequent ruling on this matter that Ms. Adler also submitted a memorandum concerning this issue, we are unable to locate said memorandum in the record.

. Because Ms. Adler’s motion for appeal was filed prior to the signing of the trial court’s final judgment, this court issued a rule on February 29, 2016, ordering the parties to show cause why this appeal should not be dismissed. On April 21, 2016, another panel of this court maintained the appeal, but reserved a final determination as to whether the appeal should be maintained to the merits panel. As set forth in La. Code Civ. P. art. 1911(A), every final judgment shall be signed by the judge. Moreover, "For the purpose of an appeal as provided in Article 2083, no appeal may be taken from a final judgment until the requirement of this Article has been fulfilled.” La. Code Civ. P. art. 1911(B). Article 1911 has been interpreted to provide that an appeal granted before the signing of a final judgment is subject to dismissal until the final judgment is signed. However, once the final judgment has been signed, any previously existing defect has been cured, and there is no useful purpose in dismissing the otherwise valid appeal. Overmier v. Traylor, 475 So.2d 1094, 1094-1095 (La. 1985) (per curiam). Accordingly, even though Ms. Adler's appeal was taken prior to the signing of the trial court's final judgment in this matter, any prematurity in the filing of the appeal was cured by the signing of the judgment. Thus, we maintain Ms. Adler's appeal herein.

. As set forth in La. R.S. 23:844, six requisites must be alleged and proven prior to the issuance of an injunction in a labor dispute. .The statute provides, in pertinent part, as follows:
No court shall issue a temporary or permanent injunction in any case involving Or growing out of a labor dispute, as herein defined, except after hearing the testimony of witnesses in open court, with opportunity for cross-examination, in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect:
(1) That unlawful acts have been threatened or committed and will be executed or continued unless restrained;
(2) That substantial and irreparable.injury to complainant’s property will follow unless the relief requested is granted;
(3) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial thereof than will be inflicted upon the defendants by the granting thereof;
(4) That no item of relief granted is relief that a court has no authority to restrain or enjoin under R.S. 23:841;
(5) That complainant has no adequate remedy by ordinary legal procedure; and
(6)That the public officers charged with the •duty to protect complainant’s property have failed or are unable to furnish adequate protection.
The term "labor dispute” is defined in La. R.S. 23:821(3) as follows;
The term "labor dispute” includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seekihg to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee.
And Section 843 discusses the public policy behind the strict prerequisites of injunctive relief. "Legal procedure that permits a complaining party to obtain sweeping injunctive relief ... [without compliance with due process requirements] ... is peculiarly subject to abuse in labor litigation .... ” La. R.S. 23:843.

. The title of the act, while not part of the statute, may be used to determine legislative intent. State v. Madere, 352 So.2d 666, 668 (La.1977).