GUIDRY, J.
This appeal, and related supervisory writ application, stem from a judgment denying a request for the issuance of a preliminary injunction. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
In 1975, Texas Brine Company, LLC acquired a lease to produce salt from a salt dome located under 40 acres of land in Assumption Parish ("Salt lease"), which land belongs to Occidental Chemical Corporation ("Oxy Chem").[1] Texas Brine later assigned its interest in the Salt lease to Vulcan Materials Company in 1976, but remained the operator of the brine production wells and related facilities pursuant to certain operating and supply agreements executed by Texas Brine and Vulcan Materials Company in 1975 and 2000.
In 2004, Basic Chemicals Company purchased the assets, properties, rights, contracts, and claims of Vulcan Materials Company. Then in 2005, Vulcan Materials Company assigned to Basic Chemicals Company all of its legal and beneficial rights, title, and interest of any kind or character in all business contracts. At the time of the acquisitions from Vulcan Materials Company, Oxy Chem held all of the outstanding equity interest in Basic Chemicals Company.[2]
*103 In 2012, a large sinkhole appeared on the aforementioned Oxy Chem land in Assumption Parish following the collapse of a portion of the salt dome beneath the land. Several persons and entities claiming personal injuries and loss of property and business due to the sinkhole filed a petition for damages on May 29, 2013, naming as defendants Texas Brine, Oxy Chem, the State of Louisiana through the Department of Natural Resources, and Miller Engineering & Associates, Inc. Texas Brine and Oxy Chem filed separate answers to the petition, generally denying liability and raising various affirmative defenses to the plaintiffs' claims. Oxy Chem additionally filed a separate cross claim against Texas Brine for damages sustained to its property, for breach of contract, and for contribution and indemnification to the extent it is found liable to the plaintiffs. Texas Brine, in turn, filed a demand to arbitrate certain disputes between it and Oxy Chem pursuant to the provisions of the 2000 Amended and Restated Operating and Supply Agreement that Texas Brine had executed with Vulcan Materials Company.[3] Years later, however, Texas Brine sought to terminate the arbitration.
On July 5, 2017, Texas Brine filed a request for injunctive relief[4] in the instant action, seeking the issuance of preliminary and permanent injunctions, after due proceedings, to enjoin Oxy Chem from proceeding with the arbitration. Texas Brine then filed a motion for preliminary injunction on July 7, 2017, again requesting that Oxy Chem be enjoined from proceeding with arbitration. The basis for both pleadings is Texas Brine's assertion that Oxy Chem is not a valid assignee of the 2000 Amended and Restated Operating and Supply Agreement between Texas Brine and Vulcan Materials Company, which contains the provision for arbitration.
A hearing on the request for a preliminary injunction was held October 23, 2017. After taking the matter under advisement, the trial court issued written reasons and signed a judgment on November 15, 2017, denying Texas Brine's motion for preliminary injunction. Pursuant to La. C.C.P. art. 3612, Texas Brine devolutively appeals the November 15, 2017 judgment denying its motion for preliminary injunction. Texas Brine also filed an application for supervisory writs challenging the judgment, which application was referred to this panel to decide in conjunction with the related appeal. See Marchand v. Texas Brine Company, LLC, 17-1713 (La. App. 1st Cir. 5/14/2018) (unpublished writ action).
DISCUSSION
A preliminary injunction is essentially an interlocutory order issued in summary proceedings incidental to the main demand for permanent injunctive relief. It is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of a controversy.
*104 Farmer's Seafood Co., Inc. v. State ex rel. Department of Public Safety, 10-1746, p. 4 (La. App. 1st Cir. 2/14/11), 56 So.3d 1263, 1266.
An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law. La. C.C.P. art. 3601(A). Generally, a party seeking the issuance of a preliminary injunction must show that he will suffer irreparable injury, loss, or damage if the injunction does not issue and must show entitlement to the relief sought; this must be done by a prima facie showing that the party will prevail on the merits of the case. Adler v. Williams, 16-0103, p. 9 (La. App. 1st Cir. 9/16/16), 203 So.3d 504, 512-13.
Although a trial court's judgment on a preliminary injunction constitutes an interlocutory ruling, a party aggrieved by a judgment granting or denying a preliminary injunction is entitled to an appeal. La. C.C.P. art. 3612(B) ; Tobin v. Jindal, 11-0838, p. 4 (La. App. 1st Cir. 2/10/12), 91 So.3d 317, 320. Appellate review of a trial court's issuance of a preliminary injunction will not be disturbed on review unless a clear abuse of discretion is shown. Concerned Citizens for Proper Planning, LLC v. Parish of Tangipahoa, 04-0270, p. 5 (La. App. 1st Cir. 3/24/05), 906 So.2d 660, 663.
In its reasons for judgment, the trial court found that Texas Brine did not establish that it would suffer irreparable injury, loss, or damage nor that it was entitled to the relief requested. Relying on a decision of the federal Fifth Circuit, the trial court essentially concluded that Texas Brine would not suffer irreparable harm by arbitrating a dispute that it did not contractually agree to arbitrate. See City of Meridian, Mississippi v. Algernon Blair, Inc., 721 F.2d 525, 529 (5th Cir. 1983). As the trial court held, "whether a claim is properly within the scope of the parties' contractual agreement is a matter than can be reviewed on appeal after [the] conclusion of arbitration, and a party's right to a trial in court is not irretrievably lost, even if the trial court erred in ordering arbitration in the first instance."
In this appeal, Texas Brine argues that the preliminary injunction should have been granted because this court has held that injunctive relief is properly granted to enjoin arbitration where a party has not agreed to the same, citing the case of W.E. Parks Lumber Co., Inc. v. Ronald A. Coco, Inc., 297 So.2d 925, 927 (La. App. 1st Cir.), writ denied, 302 So.2d 23 (La. 1974). Notably, in that case, the parties did not dispute that an agreement to arbitrate existed between the parties; rather, the issue was whether the particular dispute between the parties was one of the issues that the parties agreed to submit to arbitration. This court upheld the trial court's determination that the dispute at issue was not included in the scope of the issues that the parties agreed to submit to arbitration. Hence, this court agreed that the party objecting to arbitration would be irreparably harmed by being forced to arbitrate "in a proceeding not required by the contract." W.E. Parks Lumber Co., Inc., 297 So.2d at 927.
In the matter before us, however, the evidence does not clearly show there was no agreement between the parties to submit the underlying disputes to arbitration. Unlike in W.E. Parks Lumber Co., Inc., where a valid agreement to arbitrate did exist, but it was found that the parties' dispute was not encompassed within the scope of that agreement, Texas Brine contends herein that no valid agreement to arbitrate exists between the parties because the assignment agreement between Basic Chemicals Company and Vulcan Materials Company, whereby the provisions of the 2000 Amended and Restated Operating *105 and Supply Agreement would be made applicable to Oxy Chem, is invalid. Texas Brine argues that the assignment from Vulcan Materials Company to Basic Chemicals Company was only a partial assignment and that the 2000 Amended and Restated Operating and Supply Agreement allowed for only a full assignment of Vulcan Materials Company's rights and obligations under the agreement.[5] Oxy Chem, on the other hand, argues that there was no partial assignment, but even if there was a partial assignment, the 2000 Amended and Restated Operating and Supply Agreement allows for such.
We observe that Texas Brine's argument is premised on its attack of the contract whereby the provision for arbitration would be made applicable to the parties. The United States Supreme Court, applying provisions of the Federal Arbitration Act,[6] held that a challenge to the validity of a contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator, whether the challenge is brought in federal or state court. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449, 126 S.Ct. 1204, 1210, 163 L.Ed.2d 1038 (2006) ; see also Vishal Hospitality, LLC v. Choice Hotels International Inc., 04-0568, p. 6 (La. App. 1st Cir. 6/28/06), 939 So.2d 414, 417-18, writ denied, 06-2517 (La. 1/12/07), 948 So.2d 152.
Based on the foregoing, we find that the trial court did not abuse its discretion in denying Texas Brine's request for a preliminary injunction. Moreover, as the preliminary injunction is designed to and serves the purpose of preventing irreparable harm by preserving the status quo between the parties pending a determination on the merits of the controversy, and the record before us shows that the parties have been engaged in arbitration proceedings for several years, issuance of a preliminary injunction in this instance would not be appropriate. See Barber v. Louisiana Workforce Commission, 15-1598, p. 8 (La. App. 1st Cir. 6/2/16), 2016 WL 3150176, at *3 ; Concerned Citizens for Proper Planning, LLC, 04-0270 at pp. 6-8, 906 So.2d at 664-65.
CONCLUSION
For the foregoing reasons, we affirm the November 15, 2017 judgment of the trial court denying Texas Brine's request for the issuance of a preliminary injunction to enjoin the arbitration proceedings between it and Occidental Chemical Corporation and deny the application for supervisory writs seeking to overturn the same. All costs of this appeal are cast to the appellant, Texas Brine Company, LLC.
JUDGMENT AFFIRMED; WRIT DENIED.

The parties actually named in the lease were Texas Brine Corporation, the predecessor to Texas Brine Company, LLC, and Hooker Chemicals & Plastics Corporation, the predecessor of Oxy Chem.

The 2004 Asset Purchase Agreement executed by Basic Chemicals Company and Vulcan Materials Company states, in pertinent part:
Whereas, concurrently with the execution and delivery hereof ... Occidental Chemical Corporation, ... holder of all of the outstanding equity interests of [Basic Chemicals Company], has agreed to guarantee the representations, warranties, covenants, agreements and other obligations of [Basic Chemicals Company] herein pursuant to the terms and conditions of a guarantee, the form of which is attached as Exhibit B-1 hereto[.]
In its cross claim against Texas Brine in the underlying litigation, Oxy Chem averred that Basic Chemicals Company later merged into Oxy Chem.

Section 12.10 of the 2000 Amended and Restated Operating and Supply Agreement is titled "Arbitration" and states in part, "[a]ny dispute, controversy or claim arising out of or relating to this Agreement or the breach, validity or termination thereof shall be finally settled by arbitration."

The request was contained in a pleading titled "Texas Brine Company, LLC's Amended & Supplemental Incidental Demand and Petition for Injunctive Relief."

Section 11.1 of the 2000 Amended and Restated Operating and Supply Agreement states:
Assignment by Vulcan. This Agreement and all rights and obligations hereunder may be assigned by Vulcan to any person, firm or corporation acquiring the facilities of Vulcan at Geismar, Louisiana. This Agreement shall be binding upon the successors and assigns of Vulcan. No transfer or assignment hereof shall relieve Vulcan of its obligations hereunder.

See 9 U.S.C. §§ 1 -16. Section 12.10, the arbitration provision of the 2000 Amended and Restated Operating and Supply Agreement, states in part that "[t]he arbitration shall be governed by the U.S. Federal Arbitration Act."